Christopher W. Arledge (Bar No. 200767)
  carledge@turnergreen.com
Peter Afrasiabi (Bar No. 193336)
  pafrasiabi@turnergreen.com
John Tehranian (Bar No. 211616)
  jtehranian@turnergreen.com
**TURNER GREEN LLP**
535 Anton Boulevard, Suite 850
Costa Mesa, California 92626
Telephone:  (714) 434-8750
Facsimile:   (714) 434-8756

Attorneys for Defendants Charles S. DeVore and Justin Hart

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON HENLEY and MIKE CAMPBELL, | Case No. **SACV 09-0481 JVS** |
| Plaintiffs, | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(B)(6)** |
| v. | |
| CHARLES S. DEVORE and JUSTIN HART, | Hearing Date:  June 29, 2009<br>Hearing Time:  1:30 p.m. |
| Defendants. | |

///

///

///

14915.1

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(b)(6)**

## I. HENLEY'S SECONDARY CLAIMS SEEK TO EXPAND COPYRIGHT LAW BEYOND ITS BOUNDS

It appears all parties agree on two fundamental principles. First, if Henley's Lanham Act and UCL claims seek to protect the same interests as copyright law, those claims must be dismissed, either because they would be preempted or simply because the Lanham Act and UCL by their own terms do not extend into that territory. Second, however, false endorsement claims under the Lanham Act are viable, assuming the plaintiff pleads the necessary elements. As Henley rightly notes, "the copyright and Lanham Act claims address entirely different harms: invasion of one's intellectual property interest, on the one hand, versus economic damages to one's public persona, on the other." Opposition at 13-14. Put another way, copyright law protects against the unauthorized use of copyrighted material—here, music and lyrics—whereas the Lanham Act and the UCL protect against the unauthorized use of a "celebrity's persona." *See* Opposition at 10. The problem here is that Henley's secondary claims relate to the use of copyrighted materials. Essentially, Henley wants to use the Lanham Act and the UCL to claim quasi-copyright protection where the Copyright Act refuses to go.

### A. Henley does not plead false endorsement as established by the case law

To plead a false endorsement claim under the Lanham Act (or its state equivalent, the UCL), Henley must plead that Defendants misappropriated some aspect of his persona. In the Ninth Circuit's words, "courts have recognized false endorsement claims brought by plaintiffs, including celebrities, for the unauthorized imitation of their **distinctive attributes**, where those attributes amount to an unregistered commercial 'trademark.'" *Waits v. Frito-Lay, Inc.* 978 F.2d 1093, 1098, 1106 (9th Cir. 1992) (emphasis added). Here, Henley has not alleged that Defendants misappropriated any of his "distinctive attributes." They have not used his voice or his image; they have not used an imitation of his voice or image.

In his Opposition, Henley searches about for a "distinctive attribute" on which to hang his false endorsement claim, and the best he can come up with is that the backing track Defendants used sounds like the backing track he used when he sang the original

songs. "The close simulation—rhythmically, sonically, stylistically—of Henley's familiar instrumental backing tracks for 'The Boys of Summer' and 'All She Wants to Do Is Dance' could easily be mistaken for the original renditions and thus give rise to the inference that Henley licensed, and therefore approved, the content and message of the Boys of Summer and Dance Videos." Opposition at 11-12. Are the backing tracks are similar? Of course; they are the same musical compositions. But the use of those musical compositions concerns copyright law—the alleged "invasion of one's intellectual property interest" in Henley's words—rather than the use of Henley's "public persona." Opposition at 13-14. After all, it is possible to use the musical compositions without using **Henley** or any of his "distinctive attributes." That is precisely what Defendants have done.

Indeed, Defendants have found no case holding that the mere use of a copyrighted work without the use of a "distinctive attribute" of the plaintiff's constitutes false endorsement, and Henley certainly does not cite one. He makes much of two district court cases, *Browne v. McCain* and *Butler v. Target*. But in both cases, the defendants used the plaintiffs' ***actual voices***, and therefore they did misappropriate a "distinctive attribute" of the plaintiffs. *Browne v. McCain*, 2009 WL 483212 (C.D. Cal. 2009) ("During the Commercial, a sound recording of Browne performing the Composition, *Running on Empty*, plays in the background."); *Butler v. Target Corp.*, 323 F.Supp.2d 1052 (C.D. Cal. 2004) ("Plaintiffs' voices are prominent and recognizable in the Recording…."). Probably because the defendants in those cases used the plaintiff's voices, it does not appear that either set of defendants argued that the plaintiffs had failed to plead the necessary element of misappropriation of a "distinctive attribute." Indeed, in *Butler* the defendants seemed to make only a preemption argument. Thus, neither case supports Henley's argument that he can plead a false endorsement claim without pleading that Defendants misappropriated a "distinctive attribute."

Henley is asking this Court to extend the Lanham Act and the UCL to preclude the mere use of a copyrighted song that is somehow associated with him—even if Defendants

did not use *him or his distinctive attributes* in any way. But in making this argument, he runs squarely into *Dastar*.

### B. *Dastar* blocks Henley's proposed extension of false endorsement

Henley asserts that *Dastar* does not eliminate false endorsement claims. Opposition at 8. True. But it eliminates attempts to stretch the Lanham Act or the UCL into the realm of copyright law. Thus, if Henley had pled a proper false endorsement claim, one that included an allegation that Defendants had misappropriated one of his "distinctive attributes," *Dastar* would not stand in the way. But because Henley has pled a false endorsement claim that is nothing more than a disguised copyright claim—"False endorsement exists because Defendants used the same copyrighted material that I also use"—*Dastar* is a substantial problem.

Henley misses the problem because he misses the point of *Dastar*. He notes, rightly, that *Dastar* was an "origin of goods" case and that this is a "false endorsement" case. But that is not a distinction with a difference here. Henley would have this Court believe that the Supreme Court prohibited any "species of mutant copyright law" that upsets Congress' delicate balancing efforts in the Copyright Act in "origin of goods" cases, but that the Court was content to let mutant copyright law sprout under the guise of "false endorsement." Henley offers no support in law or logic for that distinction. In both types of cases, the Court aims to keep copyright law free of judge-made alterations that subvert Congress' efforts to balance competing rights in the copyright realm.

And there can be no doubt but that Henley is trying to use the Lanham Act and the UCL to expand copyright protection. Henley complains that Defendants used the same background track—the same notes played in the same sequence with the same rhythm, probably with similar instruments. But the right to play those particular notes in that fashion is an issue of copyright law. A defendant can play those musical notes with or without Henley's voice and image. Thus, the interest to be protected is the musical composition—the intellectual property—not Henley's persona. And the Lanham Act has nothing to say about protecting the right to play a musical composition.

14915.1                                3
**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(b)(6)**

1    Thus, Henley is wrong to assert that applying *Dastar* in this context "would
2  effectively eliminate the 'false endorsement' cause of action permitted under the Lanham
3  Act." Opposition at 9. Requiring that false endorsement claims actually concern the
4  misappropriation of a "distinctive attribute" of the plaintiff's does not "effectively
5  eliminate" such claims; it merely requires plaintiffs to allege the harm that false
6  endorsement claims seek to protect against.
7    The right to use the musical compositions at issue is governed by copyright law and
8  copyright law alone. Henley's remedy, if he has one, is to be found there.

## II. HENLEY DOES NOT ALLEGE THAT DEFENDANTS WERE ENGAGED IN COMMERCIAL ACTIVITY

Henley's false endorsement claim is a variation of basic trademark infringement law, with the "mark" in question being the plaintiff's identity. "A false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim, for it alleges the misuse of a trademark, *i.e.,* a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Waits*, 978 F.2d at 1110. Thus, the rules that apply to standard trademark infringement claims under the Lanham Act also apply to Henley's false endorsement claim.

One of these rules is that the defendant's use of the mark must be "commercial," that is, in connection with "goods or services." Henley seeks to paper over this requirement, asserting that the "in commerce" requirement is just a jurisdictional issue, and therefore (apparently) something this Court can safely ignore. So Henley breezily tries to dismiss all the cases making clear that the Lanham Act applies only to commercial activity. A good example is Henley's treatment of *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005). Henley dismisses *Bosley* with a brief aside, arguing that "DeVore and Hart's attempt to find support in *Bosley Medical Institute* fails, for *Bosley* concerned whether the defendant was a competitor of the plaintiff, as is required for standing to bring a false advertising – not a false endorsement – claim under the Lanham Act." Opposition at 18.

In reality, *Bosley* is not primarily about standing, and Henley's inability to deal with *Bosley* (and the litany of cases like it) demonstrates the weakness in his position.

*Bosley* was a trademark infringement and dilution action under 15 U.S.C. §§ 1114 and 1125. The defendant was a disgruntled customer of Bosley's who obtained the domain name www.bosleymedical.com and used it to express his displeasure with the services Bosley offered. The website was purely informational (or disinformational, from Bosley's perspective); it did not sell anything or provide links to Bosley's competitor's websites. Bosley lost at summary judgment before the district court, and the Ninth Circuit affirmed that ruling as to the Lanham Act claims.

The appellate court began its analysis by noting that "[t]he Supreme Court has made clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential customers." *Id.* at 676 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)). The circuit panel noted the importance of keeping the Lanham Act within these boundaries, in part because "[a]s a matter of First Amendment law, commercial speech may be regulated in ways that would be impermissible if the same regulation were applied to noncommercial expressions…. [T]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *Id.* at 677.

Thus, Bosley could not prevail under the Lanham Act unless the defendant was engaged in commercial activity. "The question before us, then, boils down to whether Kremer's use of Bosley Medical as his domain name was 'in connection with a sale of goods or services.' If it was not, then Kremer's use was 'noncommercial' and did not violate the Lanham Act." *Id.* at 677. And because Kremer was not trying to sell any goods or services, the Lanham Act did not prohibit his conduct. "The dangers that the Lanham Act was designed to address are simply not at issue in this case. The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark." *Id.* at 679.

1  Henley fights against this holding, arguing that there is a distinction between the Lanham Act's dilution provisions—which require the commercial use of a mark—and the infringement provisions, which apply even to non-commercial activities. *See* Opposition at 16-17 (criticizing Defendants for overlooking this "critical point"). But while such a distinction does appear to exist in the Second Circuit—forcing district courts to engage in difficult efforts to distinguish different types of Lanham Act claims, *see, e.g., MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 2004 WL 434004, *8 (S.D.N.Y. 2004)—the purported distinction does not exist here. According to the Ninth Circuit, "[w]hile the meaning of the term 'commercial use in commerce' is not entirely clear, we have interpreted the language to be roughly analogous to the 'in connection with' sale of goods and services requirement of the infringement statute." *Bosley*, 403 F.3d at 676. Hence, in the Ninth Circuit, all of the Lanham Act provisions apply only to commercial activities.

The difficulty in the Second Circuit stems from *United We Stand America, Inc. v. United We Stand, American New York, Inc.*, 128 F.3d 86, 92 (2d Cir. 1997), a case on which Henley strongly relies and which applied the Lanham Act to the defendant's political fundraising and endorsing activities. But there are three problems with Henley's reliance on *United We Stand*. First, the opinion is inconsistent with the Ninth Circuit's strong position that the Lanham Act be limited to regulating commercial activities. Unless Defendants' parody videos were commercial activities—and there is no factual allegation to support any such finding—the Lanham Act cannot apply.

Second, the *United We Stand* panel's rationale for applying the Lanham Act to the defendant's political activities is questionable at best. The court found that the failure to apply the Lanham Act to political activities would be "extraordinarily impractical for the functioning of our political system." *United We Stand*, 128 F.3d at 90. But that policy determination is not a court's to make. Congress "expressly enacted [the Lanham Act] to be applied in commercial contexts." *Bosley*, 403 F.3d at 679. If Congress believes legislation is necessary to avoid public confusion in the areas of political speech and political fundraising, Congress can pass legislation under the elections clause, as it has with

1   McCain-Feingold and other campaign-finance legislation.  *See, e.g., Buckley v. Valeo*, 424
2   U.S. 1, 13 & n.16 (1976) ("The constitutional power of Congress to regulate federal
3   elections is well established and is not questioned by any of the parties in this case.")  But
4   federal courts do not have the authority to stretch a provision designed to apply only to
5   commercial activity simply because they believe such legislation would be a good idea.
6        Third, even if *United We Stand* were good law in the Ninth Circuit, it still does not
7   support Henley's argument.  Here, the parodies in question were pure political speech.
8   Defendants did not sell the videos, and they did not use the videos to sell anything else.
9   The videos themselves did not even solicit funds.  So even if political fundraising activities
10  can be regulated by the Lanham Act, no case cited by Henley—including *United We*
11  *Stand*—permits the Lanham Act to regulate pure political speech.  And imposing Lanham
12  Act liability on the strength of Henley's assertion that the videos were used to raise
13  DeVore's profile and help his campaign would effectively allow the Lanham Act to
14  regulate any and all political speech by a candidate.  Every public speech by a politician is
15  designed to raise his profile and attract voters to the campaign; that fact alone does not
16  render all such speech subject to the strictures of the Lanham Act and federal courts'
17  parsing of the speech to see if it is somehow "confusing."
18       Simply put, Defendants' parodies were not commercial activities.  The Lanham Act
19  does not apply.
20  **III.  HENLEY LACKS STANDING UNDER THE UCL**
21       Henley has standing under the UCL only if he has lost property that could be subject
22  to a restitution order.  For the reasons explained in Defendants' moving papers, no other
23  reading of the statute makes sense.  *See also Walker v. USAA Casualty Ins. Co.*, 474
24  F.Supp.2d 1168, 1172 (E.D. Cal. 2007) ("[T]o have standing to assert any UCL claim,
25  Plaintiff must show either prior possession or a vested legal interest in the money or
26  property allegedly lost."  Plaintiff lacks standing here because "Plaintiff does not allege that
27  Defendant ever possessed any money or property that was formerly in Plaintiff's
28  possession."); *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal.App.4[th] 1, 22

14915.1

7

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(b)(6)**

(2009) (no standing where "an individual … has not lost 'money or property' of the type that would be subject to a restitution order under Business & Professions Code section 17203."); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 817 (2008) ("Because remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the [standing] requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution.").

Henley cites to certain district court and state cases that he contends stand for a different reading of the statute. But whether they do or not is irrelevant, because the Ninth Circuit has already adopted Defendants' view of standing and rejected Henley's: "Because remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the [standing] requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution." *Walker v. GEICO General Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009) (quoting *Buckland*, 155 Cal.App.4th at 817).[1]

Here, Henley lacks standing because he "does not allege that Defendant ever possessed any money or property that was formerly in Plaintiff's possession," and he cannot therefore be entitled to restitution. *Walker*, 474 F.Supp.2d at 1172 (analysis adopted

///
///
///

---

[1] Henley also cites *In re Tobacco II Cases*, 46 Cal.4th 298 (2009). That opinion says nothing about the meaning of the language relevant to this case, which makes clear that a plaintiff has standing to sue only if he or she "has suffered injury in fact ***and has lost money or property*** as a result of unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). Rather, the *In re Tobacco II Cases* only analyzed whether all members of a class had to have standing or just the class representative and what sort of causation requirement the statute requires in cases of alleged fraudulent conduct.

1  by the Ninth Circuit at *Walker*, 558 F.3d at 1027 ("The history and purpose of the law are
2  outlined more fully in the district court's opinion, with which we agree.")).  The Court must
3  dismiss Henley's UCL claim.

5  Dated:  June 22, 2009            **TURNER GREEN LLP**

                                  By:  /s/ Christopher W. Arledge
                                       Christopher W. Arledge
                                       Attorneys for Defendants, Charles S. Devore and
                                       Justin Hart