## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV 09-0481-JVS                     Date   July 8, 2009

Title   Don Henley, et al. v. Charles S. Devore, et al.

Present: The Honorable          James V. Selna

Nancy K Boehme                              Not Reported
Deputy Clerk                                Court Reporter

Attorneys Present for Plaintiffs:       Attorneys Present for Defendants:
Not Present                             Not Present

**Proceedings:**   (In Chambers) Order Denying Defendants' Motion to Dismiss

Defendants Charles S. DeVore ("DeVore") and Justin Hart ("Hart"), (collectively, "DeVore and Hart"), move to dismiss Plaintiffs Don Henley ("Henley") and Mike Campbell's ("Campbell"), (collectively, "Henley and Campbell"), Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Henley and Campbell oppose the motion.

I.     Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Where the heightened pleading standard of Rule 9(b) does not apply, the complaint "need only satisfy the Rule 8(a) notice pleading standard . . . to survive a Rule 12(b)(6) dismissal."  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1062 (9th Cir. 2004).  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The complaint need not contain detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action."  Id. at 555.  Under Rule 8(a), the plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Id. (internal quotations and citation omitted).

Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  In resolving a Rule 12(b)(6)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

motion, the Court must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]–that the pleader is entitled to relief. In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 2009 WL 1361536, *13 (U.S.) (internal citations and quotations omitted).

II.    Discussion

    A.    The Lanham Act Claim

Henley and Campbell's fourth cause of action alleges false association or endorsement under the Lanham Act, pursuant to 15 U.S.C. § 1125(a). 15 U.S.C. § 1125(a) provides, in pertinent part, that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-0481-JVS                         Date   July 8, 2009

Title   Don Henley, et al. v. Charles S. Devore, et al.

commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is
or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

_____DeVore and Hart now move to dismiss the Lanham Act claim.  (Mot. p. 4.)

_____1.    The Use of Goods or Services in Commerce
_____

_____ DeVore and Hart contend that "the Lanham Act claim is defective because . . .
[the] parodies do not constitute the use of goods or services in commerce."  (Id. at 11.)
They argue that they were not engaged in commerce and that their videos were not goods
or services.  (Id.)  In response, Henley and Campbell argue that, even if it is assumed that
DeVore and Hart's videos could be characterized as "noncommercial" or "political"
speech, the false endorsement claim would not fail.  (Opp. p. 16.)

The Court turns first to Browne, a recent case involving very similar facts and
issues.  Browne v. McCain, 2009 U.S. Dist. LEXIS 18876, *12-13 (C.D. Cal. 2009).  In
Browne, a songwriter brought a Lanham Act claim against presidential candidate John
McCain, the Republican National Committee (the "RNC"), and an Ohio political party
("ORP").  Id. at *1-2.  The claim arose out of defendants' alleged improper use of one of
the songwriter's songs in a campaign commercial for McCain.  Id.

The RNC argued that the court should dismiss the Lanham Act claim because the
Lanham Act applies only to commercial speech.  Id. at *12.  The court found that,
"contrary to RNC's assertions, courts have recognized that the Lanham Act applies to
noncommercial (i.e., political) and commercial speech."  Id. (citing United We Stand
America, Inc. v. United We Stand, America New York, Inc., 128 F.3d 86, 92-93 (2d Cir.
1997); MGM-Pathe Commns. Co. v. Pink Panther Patrol, 774 F. Supp. 869, 876
(S.D.N.Y. 1991)).  The court further explained that "the Act's purpose of reducing
consumer confusion supports application of the Act to political speech, where the
consequences of widespread confusion as to the source of such speech could be dire."  Id.
at *12-13.  The court further found that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

[T]he Lanham Act's reference to use in commerce does not require a plaintiff who asserts a claim under Section [15 U.S.C. § 1125(a)(1)(A)] to show that the defendant actually used the mark in commerce. . . . Rather, the Act's reference to use in commerce actually reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause to regulate interstate commerce. The interstate commerce jurisdictional predicate for the Lanham Act merely requires a party to show that the defendant's conduct affects interstate commerce, such as through diminishing the plaintiff's ability to control use of the mark, thereby affecting the mark and its relationship to interstate commerce. . . . As such, the scope of in commerce as a jurisdictional predicate of the Lanham Act is broad and has a sweeping reach.

Id. at *13-14 (quotations and citations omitted).

Other courts have also found that reference to use "in commerce" is "simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause." Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672, 677 (9th Cir. 2005) ("Bosley"); see also United We Stand Am., Inc., 128 F.3d at 92 (finding that "[t]he history and text of the Lanham Act show that 'use in commerce' reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause, rather than to limit the Lanham Act to profit-seeking uses of a trademark").

Given the clear language in Bosley cited above, this Court finds that the Lanham Act claim does not fail in the present case due to the requirement of use "in commerce" in 15 U.S.C. § 1125(a). This Court also agrees with the holding in Browne and finds that political activities may constitute "services" with the meaning of 15 U.S.C. 1125(a)(1)(a).

Several courts have found that political activities which would not be considered "commercial" in the traditional sense may constitute services pursuant to the Lanham Act. In United We Stand Am., the Second Circuit found that a political organization's political activities were "services" in "commerce" within the meaning of the Lanham Act. 128 F.3d at 89. The court explained that the term "services" has been interpreted broadly and that "[t]he Lanham Act has thus been applied to defendants furnishing a wide variety of non-commercial public and civic benefits." Id. at 90. The court explained that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-0481-JVS                     Date   July 8, 2009

Title   Don Henley, et al. v. Charles S. Devore, et al.

---

In <u>Brach Van Houten Holding, Inc. v. Save Brach's Coalition For Chicago</u>, the court held that a group engaged in soliciting donations, preparing press releases, holding public meetings and press conferences, and organizing on behalf of its members' interests was performing "services" within the meaning of the Lanham Act.  856 F. Supp. 472, 475-76 (N.D. Ill. 1994). Similarly, in <u>Committee for Idaho's High Desert v. Yost</u>, the court held that a non-profit organization engaged in dissemination of information about environmental causes via news releases, newsletters, and public advocacy was entitled to Lanham Act protection for its trade name even if it did not "place products into the stream of commerce."  881 F. Supp. 1457, 1470-71 (D. Idaho 1995), aff'd, 92 F.3d 814 (9th Cir. 1996).

<u>Id.</u>

    The court also explained that the defendant in <u>United We Stand Am.</u>:

[W]as incorporated "to solicit, collect and otherwise raise money" in support of the presidential candidacy of Ross Perot. Since its incorporation, it has engaged in political organizing; established and equipped an office; solicited politicians to run on [its] slate; issued press releases intended to support particular candidates and causes; endorsed candidates; and distributed partisan political literature.  These are the services characteristically rendered by a political party to and for its members, adherents, and candidates. Although not undertaken for profit, they unquestionably render a service. We have no doubt that they satisfy § 1114(1)(a)'s requirement that the mark be used in connection with goods or services.

<u>Id.</u>

    Although <u>United We Stand Am.</u> involved 15 U.S.C. § 1114(1)(a) rather than 15 U.S.C. § 1125(a), the court used sufficiently general language to convey that its interpretation of "services" would be equally applicable to 15 U.S.C. § 1125(a).

    This Court agrees that the Ninth Circuit ruling in <u>Committee for Idaho's High Desert</u>, 92 F.3d at 814, indicates that political activities may constitute services within the meaning of 15 U.S.C. § 1125(a).  In that case, an environmental organization brought suit

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

against a non-profit corporation concerned with influencing public policy on the same environmental issues with which the plaintiff was concerned. <u>Committee for Idaho's High Desert</u>, 881 F. Supp. at 1464. The parties had differing views which "made [them] adversaries in the public debate over the use of public lands in Idaho." <u>Id.</u>

The district court found after trial that defendants "knowingly, intentionally and deliberately adopted and used [plaintiff's] name . . . in order to cause confusion, obstruct [plaintiff's] pursuit of its environmental agenda, and thereby to obtain an advantage." <u>Id.</u> at 1468. On appeal, the Ninth Circuit found that the defendants' actions would be sufficient to render the individual [plaintiffs] liable under § 43(a) for using in commerce, <u>in connection with services</u>, a name which is likely to confuse. <u>Committee for Idaho's High Desert, Inc.</u>, 92 F.3d at 823. Thus, the court found that the defendants efforts to influence public policy formed a sufficient basis for a claim under § 43(a) of the Lanham Act. The Court finds that <u>Committee for Idaho's High Desert, Inc.</u> supports the conclusion that DeVore and Hart's alleged activities of setting forth their political views are actionable pursuant to a false endorsement claim under the Lanham Act.

The case of <u>MGM-Pathe Commns. Co. v. Pink Panther Patrol</u>, 774 F. Supp. 869, 876 (S.D.N.Y. 1991), is also instructive. In that case, the court found that a Lanham Act claim against a gay rights activist group for using the allegedly infringing name "Pink Panther Patrol" was actionable under the Lanham Act. <u>Id.</u> at 877. It does not appear that the activist group was engaged in traditionally "commercial" activities.

The Court also finds that the cases cited by DeVore and Hart are inapposite. They point to <u>Rice v. Fox Broadcasting Co.</u>, 330 F.3d 1170, 1181 (9th Cir. 2003), as well as <u>New.Net, Inc. v. Lavasoft</u>, 356 F.Supp.2d 1090, 1117 (C.D. Cal. 2004), in support of their argument. <u>Rice</u> and <u>New.Net</u> involved false advertising claims under 15 U.S.C. § 1125(a)(1)(B), rather than the false endorsement claim at issue in the present action. <u>Rice</u>, 330 F.3d at 1181; <u>New.Net, Inc.</u>, 356 F.Supp.2d at 1117. 15 U.S.C. § 1125(a)(1)(B) expressly requires "commercial advertising or promotion," while the language applicable to the false endorsement claim in this case contains no such language.

DeVore and Hart also point to <u>Bosley</u>, 403 F.3d at 677, in support of their argument. (Reply pp. 4-5.) The discussion regarding commercial use in <u>Bosley</u>, however, involved a claim pursuant to the Federal Trademark Dilution Act ("FTDA").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

Bosley, 403 F.3d at 677 (citing 15 U.S.C. § 1125(c)(1)).[1]  The court explained that the FTDA has a commercial use requirement which is "virtually synonymous with the 'in connection with the sale, offering for sale, distribution, or advertising of goods and services' requirement."  Id. at 676 (citation omitted).

This Court recognizes that, in Bosley, the Ninth Circuit used general language that could arguably suggest that a commercial requirement is equally applicable to all provisions of the Lanham Act, which would include a false endorsement claim.  For example, the court stated that "[l]imiting the Lanham Act to cases where a defendant is trying to profit from a plaintiff's trademark is consistent with the Supreme Court's view that '[a trademark's] function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his.'"  Id. at 679.  The court also said that "[t]o find a Lanham Act violation without finding commercial use may contradict Congress' intent. . . . The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark."  Id. (emphasis supplied).  The court also stated that "trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view."  Id. at 677 (citations omitted).

It is somewhat unclear whether the Ninth Circuit was indicating that the Lanham Act as a whole applies only in commercial contexts, or whether the court was merely suggesting that the Lanham Act primarily applies in commercial contexts.  The Court also notes that Bosley itself did not concern a false endorsement claim.  Given the lack of clarity, the Court finds it appropriate to rely on the Ninth Circuit's holding in Committee for Idaho's High Desert, Inc., 92 F.3d at 823, which suggests that a commercial context is not always required.[2]  The Court also notes that the Bosley court cited to United We

---

[1] Likewise, the relevant discussion regarding commercial versus noncommercial activity in MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc., 2004 U.S. Dist. LEXIS 3644 (S.D.N.Y. 2004), involved an FTDA claim.

[2] The Court also notes that the plain language of 15 U.S.C. § 1125 suggests that there is no commercial context or commercial use requirement for 15 U.S.C. § 1125(a)(1)(A).  Every subsection of 15 U.S.C. § 1125 other than 15 U.S.C. § 1125(a)(1)(A) directly refers to some form of a commercial context.  Although the court in Bosley found that the Anticybersquatting Consumer Protection Act ("ACPA") does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-0481-JVS                     Date   July 8, 2009

Title      Don Henley, et al. v. Charles S. Devore, et al.

Stand Am. and did not disavow that portion of the opinion which recognized a Lanham Act violation in a non-commercial context.  Bosley, 403 F.3d at 679.

Finally, DeVore and Hart point to Tax Cap Committee v. Save Our Everglades, Inc., 933 F.Supp. 1077 (S.D. Fla. 1996).  In that case, the court found that soliciting signatures on petitions was not a "service" rendered in commerce under the Lanham Act. Id. at 1081.  The court noted that the solicitors did not solicit funds, volunteers, or supporters on the face of the petitions.  Id.  The court also pointed out that the "service" was only being rendered in the State of Florida, not in other states or in foreign countries. Id.  The court went on to distinguish Brach Van Houten Holding, Inc., 856 F.Supp. at 472, finding that the defendant in Brach "was engaged in soliciting donations, preparing press releases, holding public meetings and press conferences, etc."  Id.  The court found that the defendant in Tax Cap Committee, on the other hand, was not seeking to establish an identity, to raise funds, or to attract members.  Id.  Thus, it appears that the court focused heavily on the fact that the activity in question was very narrow.  In the present case, the Court finds, for purposes of the motion to dismiss, that the alleged activities are much broader and more akin to the activities in Brach.[3]

Accordingly, the Court finds that DeVore and Hart have failed to provide the Court with sufficient authority demonstrating that the Lanham Act claim in this action must fail because the videos do not constitute the use of goods or services in commerce.  The Court declines to dismiss the Lanham Act claim on that basis.

2.     Use of Name, Image, or Other Distinctive Attribute / Preemption

---

not contain a commercial use requirement, the court noted that the ACPA requires that the plaintiff establish a bad faith intent to profit.  The requirement of an intent to profit suggests a requirement of a commercial context.  Thus, the fact that 15 U.S.C. 1125(a)(1)(A) is the only subsection of the Lanham Act which does not expressly require a commercial context (other than the phrase "in commerce" discussed above) suggests that Congress did not intend such a requirement.

[3]  Henley and DeVore have alleged that the use of the songs in connection with the videos was for "campaign, publicity and fundraising purposes." (Compl. ¶ 71.)  They also allege that there was a link to a fundraising page on the April 7th positing of the video.  (Id. at ¶ 35.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-0481-JVS                    Date   July 8, 2009

Title      Don Henley, et al. v. Charles S. Devore, et al.

DeVore and Hart maintain that Henley and Campbell impermissibly ask this Court to "extend the false endorsement theory, finding Lanham Act liability for the mere act of using without permission a copyrighted musical composition that is somehow associated with someone else." (Mot. pp. 5-6.) Relying on <u>Dastar</u> <u>Corp.</u> <u>v.</u> <u>Twentieth</u> <u>Century</u> <u>Fox</u> <u>Film</u> <u>Corp.</u>, 539 U.S. 23 (2003), DeVore and Hart contend that Henley and Campbell's false endorsement claim would "stretch the Lanham Act to protect interests governed by the Copyright Act" and in effect create "a species of mutant copyright law." (Mot. p. 9.)

In opposition, Henley and Campbell contend "in invoking the Supreme Court's decision in <u>Dastar</u>, DeVore and Hart misapprehend the nature of Henley's claim." (Opp. p. 9.) Moreover, Henley and Campbell maintain that the "copyright and Lanham Act claims rest on different operative facts" and "address entirely different harms." (<u>Id.</u> at 13.)

The Court turns first to <u>Dastar</u>.

     a.     <u>Dastar</u> <u>v.</u> <u>Twentieth</u> <u>Century</u> <u>Fox</u>

In 1995, a film company, Dastar, copied a television series ("Crusade") about General Dwight D. Eisenhower's account of the allied campaign in Europe during World War II.[4] <u>Dastar</u>, 539 U.S. at 26. At the time of Dastar's copying, Crusade was in the public domain. <u>Id.</u> Upon making limited changes to the series, Dastar manufactured and sold the new video set ("Campaigns") as its own product and made no reference to the original television series or the book. <u>Id.</u> at 27. Production companies that owned the exclusive television right from the original book on which both television series were based brought an action alleging that Dastar's sale of Campaigns without proper credit to Crusade constituted "reverse passing off" in violation of § 43(a) of the Lanham Act.[5] <u>Id.</u> The issue before the Supreme Court was the scope of "origin of goods" under the Lanham Act. <u>Id.</u> at 31.

---

[4] Crusade was itself based on a book about Eisenhower's account of the allied campaign in Europe. <u>Id.</u> at 25-26.

[5] Whereas "passing off" involves a producer misrepresenting his own goods or services as someone else's, "reverse passing off" involves a producer misrepresenting someone else's goods or services as his own. <u>Dastar</u>, 539 U.S. at 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

In finding that "origin of goods" under the Lanham Act referred to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods, the Supreme Court held that the production companies could not prevail on their "reverse passing off" Lanham Act claim. Id. at 37-38.

            b.    Relevance of Dastar

DeVore and Hart contend "where the plaintiff seeks to stretch the Lanham Act to protect interests governed by the Copyright Act, the courts must stay out of Congress' way to avoid creating 'a species of mutant copyright law' that upsets Congress' careful balancing efforts." (Mot. p. 9.) However, DeVore and Hart's reliance on Dastar is misplaced.

First, Dastar involved a "reverse passing off" theory in which a producer or manufacturer contends that they should have received credit as the source of the goods but did not. 539 U.S. at 27, 31. Here, in contrast, Henley and Campbell allege a false association or endorsement claim, in which they contend that they received credit, at least implicitly, where they should not have. See Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1106 (9th Cir. 1992); Butler v. Target Corp., 323 F.Supp.2d 1052, 1058 (C.D.Cal. 2004).

Second, nothing in the Supreme Court's opinion in Dastar bars prospective plaintiffs from bringing a false endorsement or association claim under the Lanham Act. Indeed, the Supreme Court relied on the possibility of bringing a false endorsement claim to reach its holding that it would not extend the scope of "origin of goods" for communicative products: [6]

       Another practical difficulty of adopting a special definition of "origin" for communicative products is that it places the manufacturers of those products in a difficult position. On the one hand, they would face Lanham Act liability for failing to credit the creator of a work on which their lawful copies are based; and on the other hand they could face Lanham Act liability for crediting the creator if that should be regarded

---

    [6]A communicative product "is one that is valued [. . .] for the intellectual content that it conveys, such as a book or [. . .] a video." Dastar, 539 U.S. at 33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

as implying the creator's "sponsorship or approval" of the copy.

Dastar, 539 U.S. at 36 (emphasis in original).

Third, there is no danger of this Court entertaining a claim that is in essence "a species of mutant copyright law." The Supreme Court in Dastar explained its concern:

> Assuming for the sake of argument that Dastar's representation of itself as the "Producer" of its videos amounted to a representation that it originated the creative work conveyed by the videos, allowing a cause of action under § 43 (a) [amended as § 1125(a)] for that representation would create a species of mutant copyright law that limits the public's 'federal right to "copy and to use" expired copyrights' (emphasis added).

Id. at 34.

In subsequent paragraphs, the Court makes it clear that its concern lies with extending protection for uncopyrighted or expired works and not with a cause of action under a false association or endorsement claim. See id. at 34-35. As discussed below, Henley and Campbell have sufficiently alleged a cognizable false endorsement claim.

Accordingly, the Court finds that DeVore's and Hart's reliance on Dastar is misplaced.

        c.     Sufficiency of the False Association or Endorsement Claim

DeVore and Hart contend that Henley and Campbell's pleading is defective for not pleading the use of a "distinctive attribute" because DeVore and Hart did not use Henley's voice or his image or "an imitation of his voice or image." (Reply p. 1.) Thus, DeVore and Hart contend that permitting Henley and Campbell's false endorsement claim without alleging the use of a "distinctive attribute" would require an impermissible extension of the Lanham Act into the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

realm of copyright law.  (Id. at 2-3.)

Although the Supreme Court in Dastar noted that when construing the Lanham Act, the Court has been "careful to caution against misuse or over-extension" of trademark and related protections into areas traditionally occupied by patent or copyright, the Court finds no such over-extension in this action.  539 U.S. at 34.

First of all, the court in Aagard v. Palomar Builders, Inc. explained that claims for "palming off" are generally not preempted, while claims for "reverse palming off" are generally preempted.   344 F.Supp.2d 1211, 1216 (E.D.Cal. 2004).  "The legislative history of the Copyright Act states: 'Section 301 [of the Copyright Act] is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and [palming off] even where the subject matter involved comes within the scope of the copyright statute.'  Accordingly, traditional palming off is not preempted by the Copyright Act."  Id. (citations omitted).

Henley and Campbell assert the "misappropriation of exclusive rights under the Copyright Act, but also [ ] the alteration and misuse of works closely associated with Henley improperly to suggest that Henley endorses DeVore." (Mot. p. 24.)  Thus, Henley and Campbell are basing their claim, at least in part, on "palming off," as discussed above.  They are contending that DeVore and Hart are "palming off" their video on Henley by suggesting his endorsement.

Moreover, a finding that the Lanham Act claim is not preempted comports with the holding in Butler, 323 F.Supp.2d at 1057.  In that case:

[A] national retail corporation used plaintiffs' "signature song" in its commercials and advertising campaigns.  The court concluded that the corporation's use of plaintiffs' actual song in the commercials involved a right equivalent to that protected by federal copyright laws.  However, to the extent that the corporation's signage and advertising confused customers into believing plaintiffs endorsed the corporation's stores, the court ruled that plaintiffs' claim contained an extra element that qualitatively changed the nature of the allegation; to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

that extent, the claim was not preempted by federal law.

Aagard, 344 F.Supp.2d at 1217 (citing Butler, 323 F.Supp.2d at 1057).

        In other words, in Butler, the element of false endorsement constituted an extra element that changed the nature of the allegation.  At oral argument, DeVore and Hart argued that Henley and Campbell have not alleged sufficient facts to support the contention that the videos do more than misappropriate the songs.  In other words, DeVore and Hart argued that Henley and Campbell have not alleged a distinctive attribute showing that the videos create a false association with Henley himself.  This Court disagrees.

        In Waits, the Ninth Circuit explained that "courts have recognized false endorsement claims brought by plaintiffs, including celebrities, for the unauthorized imitation of their distinctive attributes, where those attributes amount to an unregistered commercial 'trademark.'"  Waits, 978 F.2d at 1106.  The court cited to various cases which found cognizable false endorsement claims based on distinctive attributes including uniforms, photographs, names, faces, and voices.[7] Id.  The court noted that "Congress approved the broad judicial interpretation . . . to include distinctive sounds and physical appearance."  Id. at 1107.  The court then found a cognizable false endorsement claim based on a commercial featuring a vocal performance imitating Wait's raspy singing voice.  Id. at 1096.

        Here, Henley and DeVore allege that the video "mimics Henley's recorded performance of 'The Boys of Summer' music.[8]  (Compl. ¶ 25.)  The Court finds that this goes beyond an allegation of mere copying of the song or the musical composition.  Henley's performance of the song is distinct from the song itself.

_____

        [7]  The court explained that "[a] false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim, for it alleges the misuse of a trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product."  Id. at 1110.

        [8]  Henley and Campbell made a similar allegation with regard to "All She Wants to Do Is Dance."  (Compl. ¶ 4.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. | | |

Moreover, Henley and Hart alleged that DeVore and Hart used well-known songs associated with Henley "one almost immediately after another." (Id. at ¶ 5.)  The Court finds that this is at least some evidence of an extra element beyond the mere copying of the underlying song.  If DeVore and Hart used the two songs one right after the other, it may be more likely that the public would falsely associate Henley with the video.  Thus, the claims are not preempted by the Copyright Act.[9]

In addition, although it is a close question, the Court finds that the allegation of mimicking performance is sufficient for purposes of pleading distinctive attributes in this case.  For example, it may be that the videos mimic Henley's voice, as in Waits.  The Court will not require Henley and Campbell to provide specific details of the alleged mimicking in their Complaint for purposes of this motion to dismiss.  In other words, the Court finds that the question of whether the videos in fact imitate distinctive attributes is better resolved on a more detailed record.

Accordingly, the Court finds that Henley and Campbell's false association or endorsement claim is sufficiently plead and is not preempted.  Therefore, the Court declines to dismiss the Lanham Act claim.

B.   Unfair Competition Law

DeVore and Hart move to dismiss the fifth cause of action for Unfair Business Practices pursuant to California Business & Professions Code § 17200 (the "UCL" claim).  (Mot. p. 13.)

1.   Standing

DeVore and Hart contend that the UCL claim is defective because Henley "lacks standing to sue under the UCL because Defendants have not deprived him of money or property that could be subject to a restitution order."  (Id.)

---

[9]  The case of Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1141 (9th Cir. 2006), is distinguishable.  See discussion of Laws, infra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

"Under prior law, any person acting on behalf of the general public could sue for relief under California's unfair competition law. (Former § 17204, as amended by Stats. 1993, ch. 926, § 2.) At the General Election held on November 2, 2004, voters approved Proposition 64 and modified the UCL's standing requirement to provide that a private person has standing to sue only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' (Bus. & Prof.Code, § 17204, as amended by Prop. 64, § 3.)" Daro v. Superior Court, 151 Cal.App.4th 1079, 1097 (2007) (emphasis supplied).

DeVore and Hart argue that a plaintiff can have standing under Section 17204 only if the plaintiff has suffered the same type of loss of money or property that would make the plaintiff eligible for the restoration of its money or property under Section 17203. (Mot. p. 16.) Section 17203 of the UCL, which discusses the remedies available under the act, provides that:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204.

Cal. Bus. & Prof. Code § 17203 (emphasis supplied).

Thus, Section 17203 provides for injunctive relief or restitution under the UCL. DeVore and Hart contend that, in order to have standing under the UCL, a plaintiff must allege a loss of money or property which could be subject to restitution. They further contend that the type of loss alleged by Henley and Campbell could not be the subject of a restitution order.

In support of their argument, DeVore and Hart point to Buckland v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

Threshold Enterprises, Ltd., 155 Cal.App. 4th 798 (Cal.App. 2 Dist. 2007).  In Buckland, the court found that the Section 17204 standing requirement, which obliges plaintiffs to show that they lost money or property as a result of unfair competition, "limit[s] standing to individuals who suffer losses of money or property that are eligible for restitution."  Id. at 817-18.  This Court agrees that the plain language of this case indicates that plaintiffs only have standing under the UCL if they suffer a loss eligible for restitution.

DeVore and Hart also point to Butler v. Adoption Media, LLC, 486 F.Supp.2d 1022 (N.D. Cal. 2007).  In Butler, the court found that the "plaintiffs' expenditure of time and money preparing an application [wa]s not the kind of loss of money or property that is necessary for standing under the new version of the unfair competition law.  Restitution, which is the only monetary recovery possible under § 17200, involves the payment or return of money or property that belongs to the plaintiff."  Id. at 1062.  The Court finds that this does not necessarily support DeVore and Hart's interpretation of the UCL standing requirements.  The court here may be merely making the point that the plaintiffs did not have standing for the recovery of monetary damages for losses not subject to restitution.  This does not necessarily speak to a request for injunctive relief, which is at issue in the present case.  The Court recognizes that the Butler opinion suggests that there is a connection between the language in Sections 17203 and 17204.

Moreover, DeVore and Hart point to Judge Sabraw's opinion in Center for Biological Diversity, Inc. v. FPL Group, Inc., 2006 WL 2987634 (Cal. Super. Ct. Oct. 12, 2006).  The court found that the "'loss of money or property' needed for standing under § 17204 should be interpreted the same as the 'lost money or property' that the Court may order restored under § 17203" because such an interpretation "gives effect to the plain language of [the] statute, and makes the standing language in § 17204 . . . consistent with the scope of relief language in section 17203."  The court also found that a different interpretation would "open the possibility that a plaintiff can have 'lost . . . property as a result of . . . unfair competition' under section 17204, but the Court might be unable, under section 17203, to restore to that plaintiff the 'property' that was lost.  This would be a peculiar result."  Id.  Finally, the court noted that "[i]nterpreting § 17204 to allow for standing based on loss of a property interest not concrete enough to suffice for a claim of restitution would mean permitting standing to be based on a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

non-concrete, abstract interest," which is not permissible under Proposition 64.  Id. This Court agrees that DeVore and Hart's interpretation of the UCL standing requirements is in line with the opinion in Center for Biological Diversity.

In response, Henley and Campbell point to G&C Auto Body, Inc v. GEICO Gen. Ins. Co., 2007 U.S. Dist. LEXIS 91327 (N.D. Cal. Dec. 12, 2007) ("G&C"), a case which squarely contradicts DeVore and Hart's position and the case law discussed above.  The court in G&C found that the plaintiffs had standing to seek injunctive relief in connection with their § 17200 claim and that they adequately established both injury in fact and a loss of money despite the fact that they could not obtain monetary relief which was restitutionary in nature.  Id. at 11-12.  The court explained that it did not "consider the wording of the relevant portions of Sections 17203 and 17204 to be parallel."  Id.  The court also found "no basis to presume that the People of California, when adopting Proposition 64, meant for the new Section 17204 standing requirements to track the requirements established for obtaining restitution under Section 17203."  Id.  The court expressly declined to follow the holding in Walker v. USAA Cas. Ins. Co., 474 F. Supp. 2d 1168 (E.D. Cal. 2007), which found that Proposition 64's modification to the Section 17204 standing requirements now restricts the availability of injunctive relief to those that would qualify for restitutionary relief.  The court explained that the analysis in Walker, "if correct, would suggest that Plaintiff lack standing to seek even injunctive relief" if restitution were not available.

Moreover, the court in G&C found that "[t]he Walker analysis is [] in tension with White v. Trans Union, LLC, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006)."  Id.  "In White, the court rejected the argument that the Plaintiff must show that the Defendant took money directly from plaintiff in order to obtain injunctive relief under Section 17200.  White found that, at the motion to dismiss stage, allegations of lost income are enough to establish injury-in-fact, and therefore to establish standing to seek injunctive relief.  White found that, for purposes of injunctive relief, lost income 'is all the statute requires. In particular, the statute does not require that the losses in question were the product of the defendant's wrongful acquisition of the plaintiff's property.'"  Id. (citations omitted).

In their Reply Brief, however, DeVore and Hart point to two additional cases which persuade the Court that their interpretation is the controlling view.  They

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |

| Title | Don Henley, et al. v. Charles S. Devore, et al. |

point to <u>Citizens of Humanity, LLC v. Costco Wholesale Corp.</u>, 171 Cal.App.4th 1
(Cal.App. 2 Dist. 2009).  In that case, the court stated that:

> Because remedies for individuals under the [unfair competition law]
> are restricted to injunctive relief and restitution, the import of the
> [Business and Professions Code section 17204 loss of money or
> property] requirement is to limit standing to individuals who suffer
> losses of money or property that are eligible for restitution. As
> [plaintiffs] could not allege having suffered losses which would entitle
> it to restitution, it has no standing to pursue a cause of action for
> unfair competition.

<u>Citizens of Humanity, LLC</u>, 171 Cal.App.4th at 22 (citing <u>Buckland</u>, 155
Cal.App.4th at 817; <u>Walker</u>, 474 F.Supp.2d at 1172).

In addition, DeVore and Hart point to the Ninth Circuit's ruling on the issue
in <u>Walker v. Geico General Ins. Co.</u>, 558 F.3d 1025, 1027 (9th Cir. 2009).  The
court cited the following language from <u>Buckland</u>, 155 Cal.App.4th at 817-18:
"Because remedies for individuals under the UCL are restricted to injunctive relief
and restitution, the import of the requirement is to limit standing to individuals
who suffer losses of money or property that are eligible for restitution."  <u>Walker</u>,
558 F.3d at 1027.  The court also explained that "[t]he history and purpose of the
law are outlined more fully in the district court's opinion, with which we agree,"
referring to <u>Walker</u>, 474 F.Supp.2d at 1172.  As discussed above, the district court
in <u>Walker</u> found that the Section 17204 standing requirement restricts the
availability of injunctive relief to those that would qualify for restitutionary relief.
<u>Id.</u>  The district court explained that "to have standing to assert any UCL claim,
Plaintiff must show <u>either prior possession</u> or a <u>vested legal interest in the money
or property allegedly lost</u>."  <u>Id.</u> (citing <u>Korea Supply Co. v. Lockheed Martin,
Corp.</u>, 29 Cal. 4th 1134, 1140 (2003) (emphasis supplied).  This Court will follow
the Ninth Circuit view.

The next issue is whether Henley and Campbell properly allege either prior
possession or a vested legal interest in the money or property allegedly lost.
Henley and Campbell have alleged that Henley has "suffered substantial injury as a
result of DeVore and Hart's wrongful acts," (Compl. ¶ 80), which include the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

unlawful appropriation of Henley's identity and persona, as well as the taking and misuse of Henley's copyrighted property, to create the false impression that Henley is associated with DeVore's campaign.  (Id. at ¶¶ 5, 42).  This conduct is alleged to have devalued Henley's property interests because Henley derives "substantial income and economic value from licensed uses" of those works, and "[t]he association . . . with DeVore's campaign and views will make these works less attractive to be licensed for other legitimate, income-producing purposes, such as for film, television and commercials."  (Id. at ¶ 41.)  Henley and Campbell seek injunctive relief.  (See Prayer for Relief.)

DeVore and Hart correctly point out that courts have found that lost business opportunities, such as lost contracts or commissions, are not recoverable under the UCL when such profits are neither money taken away from the plaintiffs nor funds in which the plaintiffs have an ownership interest.  Korea Supply Co., 29 Cal. 4th at 1148.  The court in Korea Supply Co. found, however, that "[u]nder the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest."  Id.  An order for restitution is one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person."  Id. at 1149.  "The concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person."  Id.

The court in Korea Supply Co. also noted that "[t]o create a constructive trust, there must be a res, an 'identifiable kind of property or entitlement in defendant's hands.  As the United States Supreme Court recently said, a constructive trust requires 'money or property identified as belonging in good conscience to the plaintiff [which can] clearly be traced to particular funds or property in the defendant's possession."  Id. at 1149-50 (citations omitted) (emphasis supplied).

Here, the Court finds that the property interest in Henley's persona and in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

the copyrighted works[10] are identifiable, vested legal interests.  In <u>Waits</u>, 978 F.2d at 1100 (emphasis supplied), the Ninth Circuit found that the plaintiff's "voice misappropriation claim was one for invasion of a <u>personal</u> <u>property</u> <u>right</u>: his right of publicity to control the use of his identity as embodied in his voice."  In other words, Waits had a personal property right to control the use of his identity.  On the present motion to dismiss, the Court sees no reason that Henley would not have a personal property right in the control of his persona.  Similarly, it is a general principle that "[c]opyright . . . is a federal <u>grant</u> <u>of</u> <u>a</u> <u>property</u> <u>interest</u> in the production, replication, publication, and distribution of certain classes of 'original works of authorship fixed in any tangible medium of expression,' including musical compositions."  <u>Davis</u> <u>v.</u> <u>Blige</u>, 505 F.3d 90, 98 (2d Cir. 2007) (emphasis supplied).  Thus, Henley and Campbell have a vested property interest in their copyrighted works and in Henley's persona.

Henley's persona and the copyrighted works are also sufficiently identifiable.  Henley and Campbell allege that DeVore and Campbell unlawfully appropriated Henley's identity and persona and also took and misused the copyrighted property.  (Compl. ¶¶ 5, 42.)  In other words, Henley and Campbell allege that DeVore and Campbell unlawfully took their property: the right to exclusive use and control of Henley's persona and the copyrighted works.  An injunction could "restore" Henley and Campbell's property interest by giving them back exclusive right to use and control the property.   To be sure, Henley and Campbell may not recover loss of income or profits that they expected to make if they had had exclusive use and control of the property.  That would be a mere expectancy and not subject to restitution.  However, Henley and Campbell may seek to recover their entitlement to exclusive use and control.

Therefore, if Henley and Campbell are bringing their UCL claim under a theory that they have been deprived of the exclusive use of their property, the Court finds that Henley and Campbell have sufficiently alleged that they have suffered injury in fact and have lost money or property as a result of unfair

---

[10]  Although somewhat unclear, DeVore and Hart suggest that Henley and Campbell do not own the copyright for "All She Wants to Do Is Dance."  (Mot. p. 9.)  The Complaint suggests otherwise.  (Compl. ¶ 37.)  For purposes of this motion, the Court will accept the allegations in the Complaint as true.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

competition. That is a sufficient predicate to confer standing for injunctive relief. As discussed below, however, a UCL claim based on such a theory, in so far as the copyrighted works are involved, would be preempted.

If, on the other hand, Henley and Campbell are bringing their UCL claim based on a false endorsement theory, the Court finds no basis for standing. Henley and Campbell have not demonstrated that they had a vested interest in any damages or property lost due to false endorsement. Henley and Campbell allege that the false endorsement caused a diminution in value to their property. The implication is that they would have made additional profits had their property not diminished in value. Any amount pursuant to this theory would be a mere expectancy, as discussed above, and would not be an identifiable or clearly quantifiable sum.

Thus, because Henley and Campbell do not have standing under false endorsement theory, the Court need not address whether a UCL claim based on a false endorsement theory would be preempted.

2.    Preemption

The Court turns now to the question of whether a UCL claim based on the theory that Henley and Campbell have been deprived of the exclusive use of their copyrighted works or of exclusive control over Henley's persona is preempted by the Copyright Act. The Court finds that a UCL claim based on the copyrighted works would be preempted but that a UCL claim based on Henley's persona or identity would not be preempted.[11]

The Court turns first to the issue of whether a UCL claim based on the alleged misappropriated copyrighted works would be preempted.[12] For the reasons

---

[11] At oral argument, Henley and Campbell asserted that they are basing their UCL claim on the alleged misappropriation of Henley's persona. The Court nevertheless addresses the misappropriation of copyright argument made by Henley and Campbell in their Briefs.

[12] "[P]reemption law . . . requires analysis of each theory [of unfair competition] to determine whether it contains the necessary qualitatively different extra element

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-0481-JVS | Date | July 8, 2009 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

discussed in connection with the Lanham Act analysis, such a claim would be preempted.

The case of <u>Laws</u>, 448 F.3d at 1141, is also instructive.  The court in that case found that:

> To satisfy the 'equivalent rights' part of the preemption test . . . the . . . alleged misappropriation . . . must be equivalent to rights within the general scope of copyright as specified by section 106 of the Copyright Act.  Section 106 provides a copyright owner with the exclusive rights of reproduction, preparation of derivative works, distribution, and display.  To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights.  The state claim must have <u>an extra element</u> which changes the nature of the action.

<u>Laws</u>, 448 F.3d at 1143 (emphasis supplied).

In <u>Laws</u>, the court found that the plaintiff's claim was "based exclusively on what she claim[ed] [was] an unauthorized duplication of her vocal performance of [her] song."  <u>Id.</u>  In the present case, Henley and Campbell have not shown that a UCL claim based on the alleged misappropriation of copyrighted works, for which they have standing, is qualitatively different from a copyright claim.

Accordingly, the Court finds that a UCL claim based on a theory of deprivation of exclusive use or misappropriation of the copyrighted works would be preempted.[13]

---

distinguishing it from copyright [or patent] protection."  <u>Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.</u>, 7 F.3d 1434, 1439-40 (9th Cir. 1993).  As discussed above, Henley and Campbell would not have standing to pursue the false endorsement claim under the UCL.

[13]  DeVore and Hart contend that the UCL claim "has the same fundamental flaw as the Lanham Act claim," meaning that the UCL claim is preempted by federal Copyright

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-0481-JVS                          Date   July 8, 2009

Title   Don Henley, et al. v. Charles S. Devore, et al.

However, the Court finds that a UCL claim based on the theory that Henley and Campbell have been deprived of exclusive control over Henley's persona is not preempted by the Copyright Act.  As discussed above, the Court has found that Henley and Campbell have alleged that DeVore and Hart mimicked Henley's performance and that they used more than one song associated with Henley one right after another.  These allegations are sufficient to constitute the required extra element.

Given that Henley and Campbell clarified at oral argument that they are pursuing their UCL under the persona theory discussed above, the Court declines to dismiss the UCL claim.  Thus, Henley and Campbell have standing to pursue such a claim and the claim is not preempted by the Copyright Act.

III.   <u>Conclusion</u>

For the foregoing reasons, the motion is denied.

|  | 0 | : | 0 |
|---|---|---|---|
| Initials of Preparer | nkb | | |

law.  (Mot. p. 14.)  As discussed above, however, the Court does not find that the Lanham Act claim is preempted by federal Copyright law.