## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
| Title | Don Henley, et al. v. Charles S. Devore, et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | James V. Selna | |
| | Karla J. Tunis | Not Present |
| | Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment (Fld 4-9-10) and Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (fld 4-9-10)**

Musician Don Henley ("Henley") claims that politician Charles DeVore ("DeVore") infringed the copyrighted songs "The Boys of Summer" and "All She Wants to Do Is Dance" with two political advertisements featuring the songs "The Hope of November" and "All She Wants to Do Is Tax." DeVore claims fair use. The Court also considers whether DeVore's songs falsely suggest endorsement by Henley.

I.     BACKGROUND

Plaintiff Henley is a world-famous, Grammy-winning, multi-platinum-album-selling songwriter and recording artist.[1] He is a founding member of the Eagles, credited with one of the best-selling albums of all time. He has also enjoyed a successful solo career, releasing the multi-platinum album Building the Perfect Beast in 1984. Two of the songs on the album, "The Boys of Summer" and "All She Wants to Do Is Dance," were top-ten hits at the time.

"The Boys of Summer" ("Summer") was written by Henley and Plaintiff Mike Campbell ("Campbell"), a founding member of Tom Petty and the Heartbreakers, and the two jointly own the copyright to the song. The song is primarily about the singer's nostalgia for a past summer romance, though the Defendants contend that the song has a

---

[1] Unless otherwise noted, the facts the Court recites are undisputed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date   June 10, 2010 |
| Title | Don Henley, et al. v. Charles S. Devore, et al. | |

political theme, noting the line where the narrator "saw a DEADHEAD[2] sticker on a Cadillac," which they argue demonstrates a nostalgia for the liberal politics of the 1960's. The lyrics to "Summer" are attached in Appendix A.

"All She Wants to Do Is Dance" ("Dance") was written by Plaintiff Danny Kortchmar ("Kortchmar"), a respected songwriter, producer, and recording artist. Kortchmar is the beneficial owner of the copyright to "Dance." The song depicts an American couple on a trip to an unspecified foreign country in the midst of violence and unrest. The woman, however, is either oblivious to or ignores the tumult and simply wants to dance and party and "get down." The Defendants interpret the song as being a comment on American foreign policy in Latin America and the American public's apathy towards the situation. The lyrics to "Dance" are attached in Appendix B.

DeVore is a California assemblyman currently seeking the Republican nomination for one of California's U.S. Senate seats. Justin Hart ("Hart") is the DeVore campaign's Director of Internet Strategies and New Media. His primary duty is to conduct online-based fundraising activities and otherwise get publicity for the DeVore campaign. He does this through various means, including creating videos to be posted on DeVore's website and on YouTube.[3] Hart's compensation is directly tied to the amount of funds he brings in.

This case arises from two online videos produced by DeVore and Hart for DeVore's campaign. The first contains the song "The Hope of November" ("Hope"), a play on "Summer." DeVore was inspired to create the song in March 2009 after seeing a Barack Obama ("Obama") sticker on a Toyota Prius, which reminded him of the "DEADHEAD sticker" lyric from "Summer." DeVore proceeded to revise the lyrics of "Summer" to create a song that pokes fun at Obama, Nancy Pelosi ("Pelosi"), and Obama's supporters. The lyrics of "November" are attached below in Appendix A.

Hart and DeVore decided to produce a campaign video based on the "November"

---

[2] "Deadhead" refers to a fan of the Grateful Dead, a rock band popular during the 1960's and 70's. See United States v. Washington, 106 F.3d 983, 1017 (D.C. Cir. 1997).

[3] YouTube is a publicly-available website which hosts videos posted by third parties like the DeVore campaign.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

lyrics. Hart downloaded an instrumental-only, karaoke version of "Summer" which simulates the song's instrumental track. Hart supplied the vocals for "November," attempting to emulate Henley's style. He then produced the video by compiling images of Obama, Pelosi, and a few others, and synchronized the "November" track with the video. This video was posted to YouTube and other online sites sometime in March 2009.

Once Henley got wind of the Defendants' online video in early April 2009, he sent a notice to YouTube under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, requesting that the video be removed, and YouTube promptly complied.[4]  Only a few days later, DeVore sent a DMCA counter notification to YouTube requesting that the video be reposted on the grounds that it constituted parody. Meanwhile, DeVore decided to use a second Henley song for his campaign. This time, DeVore and Hart created a campaign video featuring the song "All She Wants to Do is Tax" ("Tax"), their take on "Dance."

"Tax" was written by DeVore, who modified the lyrics of "Dance" to lampoon Barbara Boxer ("Boxer"), one of California's Democratic Senators, and to criticize cap-and-trade and global-warming polices. Just as with "November," Hart used an instrumental-only track of "Dance," supplied his own vocals using DeVore's lyrics, and paired the song with a video he created using a variety of online images and videos of, among others, Boxer, Al Gore, and Disney character Scrooge McDuck. The Defendants posted the video to YouTube on or about April 14, 2009. On April 17, 2009, this action was filed by Henley, Campbell, and Kortchmar, alleging copyright infringement and violation of the Lanham Act.

The parties have filed cross-motions for summary judgment, each seeking relief on Plaintiffs' First through Sixth Claims for Relief for direct, vicarious, and contributory copyright infringement of each song and Henley's Seventh Claim for Relief for false

---

[4]  Under the DMCA, a "service provider," such as YouTube, is not liable for copyright infringement for material posted on its website by others so long as it promptly removes the material upon receiving a notification of infringement from the copyright holder. See 17 U.S.C. § 512(c). However, to avoid liability to the person who originally posted the allegedly infringing material, the service provider must replace the material upon receiving a counter notification from the original poster. Id. § 512(g).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |

| Title | Don Henley, et al. v. Charles S. Devore, et al. |

endorsement under the Lanham Act.[5]

II.    LEGAL STANDARD

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of a claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed. R. Civ. P. 56(a), (b); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 322.  A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted).  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

The burden initially is on the moving party to demonstrate an absence of a genuine

---

[5]  Plaintiffs have voluntarily dismissed their Eighth Claim for Relief, alleging violation of the California Unfair Competition Law, California Business and Professions Code section 17200 et seq. Defendants have, in turn, voluntarily dismissed each of their six counterclaims.  (Defs.' Mot. Br. 1 n.1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. See id. at 1137.

III.   DISCUSSION

    A.   Copyright Infringement

    To prevail on a claim of copyright infringement, Plaintiffs must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The parties do not dispute that the Plaintiffs own valid copyrights to "Summer" and "Dance," nor that "November" and "Tax" copy substantial portions of the originals. The parties only dispute whether the Defendants' use of the originals constitutes fair use.

    1.   Fair Use

    Fair use is an exception to a copyright holder's right to exclusive use of the original work and its derivatives. It has been described as "a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent." Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 549 (1985) (quoting H. Ball, Law of Copyright & Literary Property 260 (1944)). The privilege results from a recognition that some limited use of copyrighted material is necessary to allow artists and authors to improve upon, comment on, or criticize prior works. See id.; Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 575 (1994).

    Section 107 of the Copyright Act codified the common law framework for identifying fair use:

    In determining whether the use made of a work in any particular case is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                     Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

fair use the factors to be considered shall include –

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  The analysis "permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster."  Campbell, 510 U.S. at 577 (quoting Stewart v. Abend, 495 U.S. 207, 236 (1990)) (internal brackets omitted).  The factors are not winner-take-all categories to be tallied at the end to determine the prevailing party; they are intended to be carefully weighed case by case with an eye towards the policies underlying copyright protection.  See id.  "Nor may the four statutory factors be treated in isolation one from another.  All are to be explored, and the results weighed together, in light of the purposes of copyright."  Id.; accord Dr. Seuss Enters., L.P. v. Penguin Books ("Seuss II"), 109 F.3d 1394, 1399 (9th Cir. 1997).

Application of the fair use doctrine is a mixed question of law and fact.  Harper & Row, 471 U.S. at 560.  Thus, where the material facts are not subject to dispute, summary judgment on the fair use question is proper.  Fisher v. Dees, 794 F.2d 432, 436 (9th Cir. 1986).  Because fair use is an affirmative defense to copyright infringement, the defendant bears the burden of proving fair use.  Campbell, 510 U.S. at 590; Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1158 (9th Cir. 2007).

Under the first factor, the "purpose and character of the use," the Court considers the extent to which the new work is "transformative."  Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 800 (9th Cir. 2003).  The new work must add "something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  Id. (quoting Campbell, 510 U.S. at 579).  The Court also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

considers whether the purpose of the new work was for- or not-for-profit.  Id.

The second factor, the "nature of the copyrighted work," reflects a recognition "that creative works are 'closer to the core of intended copyright protection' than informational and functional works."  Id. (quoting Dr. Seuss II, 109 F.3d at 1402).

The third factor "asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole, are reasonable in relation to the purpose of copying."  Id. (quoting Dr. Seuss II, 109 F.3d at 1402) (internal quotation marks omitted).

Under the fourth and final factor, the question is "whether actual market harm resulted from the defendant's use . . . and whether 'unrestricted and widespread conduct of the sort engaged by the defendant . . . would result in a substantially adverse impact on the potential market' for the original or its derivatives."  Id. (quoting Campbell, 510 U.S. at 590).  The relevant inquiry is whether the new work tends to supplant or substitute for the potential market for the original or its derivatives.  Campbell, 510 U.S. at 592.  Harm caused by effective criticism or disparagement is not cognizable under the Copyright Act.  Id. at 591-92.

The Defendants' primary fair use argument is that their works constitute parody.  Parody is the use of some portion of a work in order to "hold[] it up to ridicule," or otherwise comment or shed light on it.  Dr. Seuss II, 109 F.3d at 1400-01 (citation omitted).  Courts have deemed parody worthy of protection under the fair use framework.  First, parody has been considered transformative because it provides socially-valuable criticism or commentary of the subject work.  Campbell, 510 U.S. at 579.  Second, parodies are permitted to draw from the most creative expressions because they "almost invariably copy publicly known, expressive works."  Id. at 586.  Third, the parodist needs to use at least some portion of the original because the effectiveness of parody depends on its ability to mimic or "conjure up" the original.  Id. at 580-81, 588.  Finally, because the author is unlikely to permit the use of his or her work to criticize or ridicule that same work, a parody is unlikely to supplant the market for the original or its derivatives.  Id. at 592.

In the seminal case of Campbell v. Acuff-Rose Music, Inc., the Supreme Court distinguished "between parody (in which the copyrighted work is the target) and satire (in which the copyrighted work is merely a vehicle to poke fun at another target)."  Dr. Seuss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|----------|------------------------|------|---------------|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|-------|--------------------------------------------------|

II, 109 F.3d at 1400. The parodist is justified in using the work because a parody's effectiveness "necessarily springs from the recognizable allusion to its object through distorted imitation. Its art lies in the tension between a known original and its parodic twin." Campbell, 510 U.S. at 588. The parodist has no alternative but to use the work. See id. In contrast, the satirist who ridicules subjects unrelated to the work lacks the same claim to use of the work, which the satirist "merely uses to get attention or to avoid the drudgery in working up something fresh." Id. at 580. As the Court put it:

> Parody needs to mimic an original to make its point, and so has some claim
> to use the creation of its victim's (or collective victims') imagination,
> whereas satire can stand on its own two feet and so requires justification for
> the very act of borrowing.

Id. at 580-81.

"The threshold question when fair use is raised in defense of a parody is whether a parodic character may reasonably be perceived." Id. at 582. This is not, however, the end of the inquiry: "parody, like any other use, has to work its way through the relevant factors and be judged case by case, in light of the ends of copyright law." Id. at 581. Indeed, the Supreme Court recognizes that parody is not a binary question, but rather a matter of degree. See id. at 580 n.14. The parodist that directly targets the original work has a greater justification for appropriation than the parodist whose aim at the original is looser. See id. The "loose" parodist has a greater burden of proving the necessity of the use and that the parody does not risk superseding potential markets for the original. Id. at 580 n.14, 582 n.16.

Justice Kennedy, concurring in Campbell, cautioned courts to be wary of post hoc rationalizations of parody. Id. at 600 (Kennedy, J., concurring). He held the view that the defendant must demonstrate "[m]ore than arguable parodic content," and that "doubts about whether a given use is fair should not be resolved in favor of the self-proclaimed parodist." Id.

This case raises the somewhat novel issue of whether, under Campbell's parody/satire distinction, criticism of the author of an original work falls on either the parody or satire side of the line. In other words, is a work which appropriates from the original to criticize the original's author — but does not directly criticize the content of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

original — validly classified as "parody"?  The appellate courts have yet to squarely address the issue,[6] and the district courts that have are split.

In a recent case in the Southern District of New York, the district court flatly rejected the argument that use of a work to criticize the work's author constitutes parody under Campbell.  See Salinger v. Colting ("Salinger I"), 641 F. Supp. 2d 250, 257 (S.D.N.Y. 2009), rev'd on other grounds, 2010 WL 1729126 (2d Cir. Apr. 30, 2010).  In Salinger I, the defendant had written a novel imagining the adventures of the character Holden Caufield from J.D. Salinger's Catcher in the Rye as a septuagenarian.  Id. at 253-54, 258.  The defendant had included Salinger himself as a character in the novel, and in the ensuing litigation argued that the novel was, in part, a parody of Salinger's persona.  Id. at 261.  The court, at the preliminary injunction stage, held that a work that only criticizes the author, and not the content, of the original does not qualify as parody.  Id. at 257, 261.

However, in another recent Southern District of New York case, the same court accepted the "parody-of-the-author" fair use defense.  See Bourne Co. v. Twentieth Century Fox Film Corp., 602 F. Supp. 2d 499, 507 (S.D.N.Y. 2009).  In Bourne, the defendants had written the song "I Need a Jew" with a tune and lyrics similar to "When You Wish Upon a Star."  Id. at 501, 502.  The defendants argued that their song was intended in part to poke fun at Walt Disney's purported anti-Semitism.  Id. at 507.  Although Disney had not actually written the song and did not own the copyright, but was merely associated with it, the court accepted this argument as supporting a parodic character and granted summary judgment for the defendant.[7]  Id. at 507-08, 511.

This split extends to southern California as well.  In a case in the Central District of California, the court found parody where the allegedly infringing work targeted the artist

---

[6]  The Second Circuit in Salinger v. Colting ("Salinger II"), --- F.3d ----, 2010 WL 1729126 (2d Cir. Apr. 30, 2010), did note the lower court's rejection of a "parody-of-the-author" fair use defense, but did not explicitly either reject or endorse the lower court's holding.  See id. at *3, *12.

[7]  In Salinger I, the court distinguished its prior decision in Bourne on the grounds that the targeting of Walt Disney in Bourne "reinforced and reiterated" the parodic purpose of targeting the song itself because of the intimate association between Disney and the song.  641 F. Supp. 2d at 261 n.4.  Thus, under Salinger I's reasoning, "parody-of-the-author" is not sufficiently transformative on its own, but may serve to supplement a legitimate parody targeting the original work.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

rather than the art. <u>See</u> <u>Burnett</u> v. <u>Twentieth</u> <u>Century</u> <u>Fox</u> <u>Film</u> <u>Corp.</u>, 491 F. Supp. 2d 962, 968-69 (C.D. Cal. 2007). The defendants in <u>Burnett</u> used an animated character in their television show resembling a character, the Charwoman, played by Carol Burnett in a different show. <u>Id.</u> at 966. The defendants argued that the use of Burnett's character was intended to poke fun at Burnett herself. <u>Id.</u> at 968. Upon the plaintiffs objection that targeting Burnett was not valid parody, the court found that "it is immaterial whether the target of [the defendants'] 'crude joke' was Burnett, the Carol Burnett show, the Charwoman, Carol's Theme Music or all four." <u>Id.</u> The court held that the defendants' use constituted parody because it put "Carol Burnett/the Charwoman in an awkward, ridiculous, crude, and absurd situation in order to lampoon and parody her as a public figure." <u>Id.</u> at 969.

However, a court in the Southern District of California appears to have reached the opposite conclusion. <u>See</u> <u>Dr.</u> <u>Seuss</u> <u>Enters.</u>, <u>L.P.</u> v. <u>Penguin</u> <u>Books</u> <u>USA</u>, <u>Inc.</u> ("<u>Dr.</u> <u>Seuss</u> <u>I</u>"), 924 F. Supp. 1559, 1568 (S.D. Cal. 1996). The defendants in <u>Dr. Seuss</u> <u>I</u> wrote a book mimicking the rhymes, illustrations, and packaging of books by Theodor S. Geisel, better known as Dr. Seuss, to recount the O.J. Simpson murder trial. <u>Id.</u> at 1561. The court, in its exposition on the parody/satire distinction, made the following statement:

> [T]he potential satirist has many alternatives to pilfering the protected expression of a copyrighted work . . . . The satirist (<u>or</u> <u>one</u> <u>intending</u> <u>to</u> <u>parody</u> <u>an</u> <u>author</u> <u>but</u> <u>not</u> <u>any</u> <u>particular</u> <u>work</u>) may freely evoke another artist by using the artist's general style. . . . Only when the satirist wishes to parody <u>the</u> <u>copyrighted</u> <u>work</u> <u>itself</u> does the taking . . . become permissible.

<u>Id.</u> at 1568 (emphasis added). This statement, however, appears to be dictum as it relates to the "parody-of-the-author" issue because the defendants in the case did not argue that they were targeting Geisel himself. <u>See</u> <u>id.</u> at 1569 (defendants argued their book "suggest[ed] limits to the Seussian imagination," i.e., "comment[ing] on the naivete of the original").

The act of ridiculing and lampooning public figures is a rich part of our First Amendment tradition and has been accorded special constitutional protections. <u>See,</u> <u>e.g.</u>, <u>Hustler</u> <u>Magazine</u> v. <u>Falwell</u>, 485 U.S. 46 (1988); <u>N.Y.</u> <u>Times</u> <u>Co.</u> v. <u>Sullivan</u>, 376 U.S. 254 (1964). In the defamation context, for example, critics of public figures have extra leeway to make charges against their targets. <u>N.Y.</u> <u>Times</u>, 376 U.S. at 279-80 (public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

officials in defamation action must prove that defendants acted with "actual malice"). In granting this protection, the Court recognized the value of criticism of public figures and the dangers of suppressing it. See id. at 269-70.

In many cases, the most effective tool of ridiculing a public figure — a time-honored, First Amendment activity — is through that person's own creations. This is particularly true where a person's fame derives from the person's expressive works, as the case often is with artists, musicians, authors, and the like. The First Amendment demands that these public figures be open to ridicule, just as their works should be. Yet without the ability to evoke their works — the very reason these figures live in the public eye — a would-be parodist may lack an adequate tool with which to lampoon. It is arguable that the parodist should be able to "conjure up" the artist through his or her work in order to hold the artist up to ridicule. Cf. Smith v. Wal-Mart Stores, Inc., 537 F. Supp. 2d 1302, 1316 (N.D. Ga. 2008) (in trademark case, finding parody where the "Wal-Mart" mark was used to evoke the company rather than the mark itself). In this case, for example, the Defendants assert that they seek to poke fun at Henley, a famous musician. The best, and perhaps only, way to conjure up Henley in a manner recognizable to the public is through his music.

The courts in Salinger I and Dr. Seuss relied primarily on the phrasing of the parody distinction in Campbell and its progeny in rejecting the "parody-of-the-author" argument. Salinger I emphasized the Campbell definition of parody as "the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works." 641 F. Supp. 2d at 257 (quoting Campbell, 510 U.S. at 580) (emphasis added in Salinger I). However, Campbell's language does not necessarily preclude parodies targeting the author. In fact, the Court recognized that parody resists a strict definition. See Campbell, 510 U.S. at 580 n.14. Under Campbell's reasoning, rather than its precise phrasing, criticism of the author via the author's works may fit within the structure of protectable parody.

First, such use may qualify as "transformative" under the "purpose" factor. The purpose of an author-parodying work is to evoke the author in order to provide socially-valuable criticism of the author, a public figure necessarily open to ridicule.[8] See id. at

---

[8] The Court has no occasion to consider whether the same reasoning would apply if the author was not a public figure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

580-81.  Second, under the "nature of the copyrighted work" factor, criticism of public figures through their work will generally require use of well-known creative expressions as a means to conjure up the figures in the public eye, especially where a person's fame arises from the work.  See id. at 586.  Third, under the "amount used" factor, the necessity of referencing public figures through their work would require the use of a least some portion of those works.  See id. at 588.  Finally, under the "effect on the market" factor, a parody lampooning the author may be unlikely to supplant any potential market for the original or derivatives thereof because of the unlikelihood that authors would license parodies ridiculing themselves.  See id. at 592 ("People ask . . . for criticism, but they only want praise." (citation omitted)); Fisher, 794 F.2d at 437 ("Self-esteem is seldom strong enough to permit the granting of permission [for a parody] even in exchange for a reasonable fee.").

However, it is important to distinguish between a use which directly targets the author for holding a particular view and a use which merely targets a view that happens to be held by the author.  See Bourne, 602 F. Supp. 2d at 507-08 (finding parody where new work lampooned Walt Disney for holding anti-Semitic views); Burnett, 491 F. Supp. 2d at 968-69 (finding parody where use ridiculed Carol Burnett's wholesome image). The parodist targeting the author may be justified in using the original work to conjure up the author, whereas the would-be parodist who targets the author's viewpoints generally is essentially creating satire and therefore lacks the need to reference the author.  Cf. Campbell, 510 U.S. at 580-81.  Under this analysis, parody of the author would not be achieved merely by the ironic use of the author's works to criticize the author's views (unless, or course, those views are reflected in the work parodied).  The would-be parodist that merely criticizes the author's views (and not the author directly) simply lacks adequate justification for using the author's work.

Ultimately, the Court need not determine on the facts of this case whether any altered work that parodies the original's author would qualify as a transformative parody under Campbell.  Even assuming that "parody-of-the-author" is a legitimate transformative purpose, the Defendants' songs do not satisfy the fair use analysis, as discussed below.  "Tax" does not target Henley at all, and "November," which only implicitly targets Henley, appropriates too much from "Summer" in relation to its slight jab at Henley and risks market substitution for "Summer" or its derivatives.

On a related note, assuming that "parody-of-the-author" is legitimate fair use, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

parties debate whether it is necessary that the author actually hold that attribute for which the author is being ridiculed.  In this case, the Defendants assert that they are poking fun at Henley because of his status as a member of the liberal "Hollywood and entertainment elite." (Defs.' Mot. Br. 5; DeVore Decl. ¶ 5.)  Henley disputes that he is liberal, and notes that he has donated to and supported Republican candidates such as John McCain.  (Pls.' Statement of Uncontroverted Facts ("Pls.' SS") 31; Henley Decl. ¶¶ 22-23; Henley Supp. Decl. ¶ 9; Henley Depo. at 59:15-24.)  However, because the relevant question is whether "a parodic character can reasonably be perceived," it does not matter whether Henley is "liberal" or not.  See Bourne, 602 F. Supp. 2d at 507-08 (finding that it did not matter whether Walt Disney was actually anti-Semitic).  The only inquiry under the "parody-of-the-author" theory is whether an audience could reasonably perceive the Defendants' songs as poking fun at Henley for his supposed liberal views.  Of course, where a parodist's charge is clearly false, this may demonstrate the lack of actual parodic character and expose the parodist's argument as a post hoc rationalization.

Finally, the parties dispute whether the parodist's subjective contemporaneous intent in making the work is relevant to the parody inquiry.  The answer is clearly yes, at least as evidence of whether the work actually contains parodic character.  In Campbell, Justice Kennedy cautioned courts to be wary of post hoc rationalizations of parody, 510 U.S. at 600, and courts have consistently looked to contemporaneous evidence of defendants' intent in making the alleged parody.  See, e.g., Salinger II, 2010 WL 1729126, at *12 (finding that defendant's prior statements contradicted his current assertions of parody); MCA, 677 F.2d at 183-84 (examining evidence of whether defendants intended to create parody when they created work); Fisher, 794 F.2d at 436-37 (examining evidence of the propriety of the defendant's conduct); Bourne, 602 F. Supp. 2d at 507-08 (same); cf. Harper & Row, 471 U.S. at 562 (examining subjective intent in non-parody case in determining whether use was in good faith).

With this framework in mind, and assuming that "parody-of-the-author" is a legitimate transformative purpose, the Court now considers the four primary elements of the fair use inquiry for each of the allegedly infringing songs.

       i.     *Purpose and Character of the Use*

It is under this factor where the Court considers whether "a parodic character can reasonably be perceived."  Campbell, 510 U.S. at 582.  The Court first tackles

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title      Don Henley, et al. v. Charles S. Devore, et al.

"November," the Defendants' take on "Summer."

"Summer" is, at least on the surface, a song about nostalgia for a lost summer romance. The narrator laments the fact that summer is over and that his love interest has gone. <u>See</u> Appendix A ("Nobody on the road / Nobody on the beach / I feel it in the air / The summer's out of reach"; "I never will forget those nights / I wonder if it was a dream / . . . / Now I don't understand / What happened to our love."). Yet the narrator can still picture his love interest and longs to rekindle the romance. <u>See id.</u> ("But I can see you – / Your brown skin shinin' in the sun / . . . / And I can tell you my love for you will still be strong / After the boys of summer have gone.")

The Defendants acknowledge this general theme of nostalgia but argue that the final verse contains a subtle political theme. The narrator states: "Out on the road today, / I saw a DEADHEAD sticker on a Cadillac / A little voice inside my head said, / 'Don't look back. You can never look back.' / . . . / Those days are gone forever / I should just them go." <u>Id.</u> As the Defendants interpret the verse, the narrator is bemoaning the failure of 1960's liberal politics (symbolized by the Deadhead sticker) to change the status quo (symbolized by the Cadillac). (Defs.' Mot. Br. 6.) This interpretation finds support in an interview Henley gave to Rolling Stone, explaining the last verse of "Summer": "We raised all that hell in the Sixties, and then what did we come up with in the Seventies? . . . After all our marching and shouting and screaming didn't work, we withdrew and became yuppies and got into the Me Decade." (Arledge Decl., Ex. 3.)[9]

The Defendants argue that "November" parodies the original by using its themes of nostalgia and disillusionment to mock Henley and other Obama supporters who, in "November," look back wistfully at Obama's campaign and bemoan his failure to deliver on the promised "hope." (Defs.' Mot. Br. 6.) This, however, does not comment on or criticize the content of "Summer" — the themes of nostalgia and disillusionment in general, or on summer romances, Deadheads, or Cadillacs in particular. Rather, "November" uses those themes and devices to mock a separate subject entirely, namely Obama and his supporters. Even the "Summer" narrator's supposed disappointment and

---

[9] The Plaintiffs object to the Rolling Stone article as hearsay. <u>See</u> <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 642 (9th Cir. 1991) (a reporter's transcriptions of a party's statement is hearsay). However, the Court declines to exclude this evidence for summary judgment purposes in recognition that the Defendants may be able to make the reporter available for cross-examination at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

disillusionment with 1960's politics is merely echoed, rather than critiqued or ridiculed, by the "November" narrator's disappointment with Obama's post-election performance. See Appendix A.

In Salinger I, the court found that the defendant, who wrote an "unofficial sequel" to Catcher in the Rye, had failed to demonstrate a probability of success on his parody defense because the sequel, rather than commenting on the character of Holden Caufield, merely repeated the elements of the character in a new setting. See 641 F. Supp. 2d at 258-260 ("It is hardly parodic to repeat that same exercise in contrast, just because society and the characters have aged."). The defendant had simply taken the Caufield character, aged him sixty years, and placed him in a modern environment, without giving legitimate commentary on the character. Id.

Similarly here, the Defendants' song simply takes the narrator of "Summer," who is (supposedly) disappointed by the result of 1960's politics and places him in the current political environment, where he is disappointed by the result of Obama's election. (Compare "Out on the road today, / I saw a DEADHEAD sticker on a Cadillac / A little voice inside my head said, / 'Don't look back. You can never look back.' / I thought I knew what love was / What did I know? / Those days are gone forever / I should just let them go," with "Out on the road today, / I saw a [sic] OBAMA sticker on a Cadillac / A little voice inside my head said, / 'Don't look back. You can never look back.' / We thought we knew what love was / What did we know? / Those days are gone forever / We should just let them go"). "November" simply does not comment on or critique the disappointment expressed in "Summer."

The Defendants also argue that "November" pokes fun at Henley himself as a supporter of Obama. According to the Defendants, Henley can be seen as the narrator of "November" — given that he was the singer of "Summer" — who is disappointed and disillusioned with Obama and nostalgic for the hopeful days of Obama's campaign. As discussed above, assuming that criticism of the author can qualify as parody, it must target the author directly, as opposed to targeting the author's views generally. Here, "November" pokes fun at Obama and the naivete and subsequent disappointment of his supporters, which includes Henley, the song's narrator. Thus, assuming the validity of "parody-of-the-author," the Court finds that the parodic theme — the lampooning of Henley himself — is reasonably perceptible. It is, however, a relatively minor element of the main satirical purpose of the song — targeting Obama and his supporters.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

"Dance" contains a more explicit social commentary than "Summer."  The song appears to recount an American couple's trip to a foreign country in the midst of some revolutionary unrest.  See Appendix B ("They're pickin' up prisoners and puttin' 'em in a pen / . . . / Rebels been rebels since I don't know when / . . . / Well, we barely made the airport for the last plane out / As we taxied down the runway I could hear the people shout / They said, 'Don't come back here Yankee!'").  The woman, however, ignores the unrest and simply wants to enjoy herself and dance.  See id. ("She can't feel the heat comin' off the street / She wants to party / She wants to get down / All she wants to do is . . . dance.")

The Defendants argue that the song can be interpreted as a criticism of American foreign policy in Latin America in the 1980's, when the song was released, and the American public's indifference toward the situation.[10]  (Defs.' Mot. Br. 6-7.)  Even taking the Defendants' interpretation as true,[11] their song does not comment on "Dance," but instead uses the same themes to comment on entirely different subjects, namely Barbara Boxer, taxation, global warming, and the proposed cap-and-trade program.  In "Tax," American taxpayers are upset with "back-breaking" taxes and the cap-and-trade program, see Appendix B ("They're pickin' up the taxpayers and puttin' 'em in a jam / . . . / Cap and trade program – from D.C. Inc. / . . . / They push and pull us right over the brink / . . . / And we finished up the campaign she could hear the people shout / They said, 'Don't come back here Boxer!'"), but Boxer either ignores or is oblivious to the taxpayers' unhappiness and insists on more taxation, see id. ("She can't feel the heat comin' off the street / She wants to party / She wants to get down / All she wants to do is . . . tax.").  "Tax" makes no mention of American foreign policy, Latin America, or the apathy of the American public.  Instead, as with "November," the Defendants evoked the same themes of the original in order to attack an entirely separate subject.  This is satire, not parody.

Nor does "Tax" directly target either Henley or Kortchmar, the author of "Dance." Unlike "November," which at least implicitly references Henley as the song's narrator,

---

[10]  The Defendants rely in part on an online music video alleged to be Henley's.  (See Supp. Arledge Decl. ¶ 3.)  Because this evidence was not produced during discovery pursuant to the Plaintiffs' request, the Court declines to consider it. Fed. R. Civ. P. 37(c)(1); Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106-07 (9th Cir. 2001).

[11]  Both Kotchmar, who wrote the song, and Henley, who performed it, dispute this interpretation.  (Kortchmar Decl. ¶ 7; Supp. Henley Decl. ¶ 7.)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

"Tax" makes no implicit or explicit reference to Henley or Kortchmar, much less ridicule them.  The song may mock political views that Henley allegedly supports, but that is insufficient justification for appropriating Henley's works, as discussed above.  The Defendants have innumerable alternatives with which to mock Boxer and her policies.

The Defendants also argue that, even if their works are more satirical than parodic, they may still constitute fair use, citing Blanch v. Koons, 467 F.3d 244, 247 (2d Cir. 2006).  This is undoubtedly true; parody is not the only form of fair use.  However, as noted in Campbell, satire faces a higher bar for fair use because it requires greater justification for appropriating the original work.

In Blanch, a painting by artist Jeff Koons incorporated part of the plaintiff's photograph.  Id. at 247-48.  Koons had scanned the photograph into a computer, removed all but the legs and feet of a woman in the photograph, adjusted the orientation of the legs, modified the coloring, and set it in a landscape painting among three other sets of women's legs hovered above images of confections.  Id.  The court found that the use was fair, despite being mostly satire rather than parody.  Id. at 254-55, 259.  The court noted the transformative nature of the work, id. at 253, the fact that it copied only the most uncreative portions of the original, id. at 257-58, and the plaintiff's admissions that Koons work did not harm the market for her work, id. at 258.

The Defendants' songs are eminently distinguishable from the work in Blanch.  Blanch involved an intense transformation of a fashion photograph to create a museum piece.  Here, the Defendants simply substituted lyrics to the Plaintiffs' songs to make a new song about a different subject.  This is hardly transformative in the manner of Blanch.  Moreover, as discussed below, the Defendants have borrowed heavily from the creative aspects of "Summer" and "Dance," unlike Koons's minor appropriation in Blanch.

The "purpose" factor also requires the Court to consider whether the defendant's use is commercial or noncommercial.  See 17 U.S.C. § 107; Harper & Row, 471 U.S. at 562.  "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price."  Id.

The Plaintiffs argue that the Defendants' use of the songs in campaign

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

advertisements qualifies as commercial use under the <u>Harper & Row</u> standard because DeVore stands to get publicity for his campaign and openly hoped that his use of Henley's music would spur campaign donations.  They note that each of the videos produced by the Defendants contained a link to DeVore's campaign website, where one could make online donations to the campaign, and that emails sent out by the campaign to publicize the videos contained a link directly to DeVore's donation webpage.  (Pls.' SS 40-41, 120-124.)

Courts that have actually considered whether campaign advertisements are commercial in the fair use context come down on the side of noncommercial.  <u>See</u> <u>Mastercard Int'l Inc. v. Nader 2000 Primary Comm.</u>, No. 00 Civ.6068 (GBD), 2004 WL 434404, at *12 (S.D.N.Y. March 8, 2004); <u>Keep Thompson Governor Comm. v. Citizens for Gallen Comm.</u>, 457 F. Supp. 957, 961 (D.N.H. 1978).  However, in the Ninth Circuit, "monetary gain is not the sole criterion[,] particularly in a setting where profit is ill-measured in dollars."  <u>Worldwide Church of God v. Phila. Church of God, Inc.</u>, 227 F.3d 1110, 1117 (9th Cir. 2000) (quoting <u>Weissman v. Freeman</u>, 868 F.2d 1313, 1324 (2d Cir. 1989)).

In <u>Worldwide Church</u>, a church made verbatim copies of a religious text for distribution among its members.  <u>Id.</u> at 1113.  The organization that owned the copyright sued for infringement and the defendant church asserted fair use.  <u>Id.</u> at 1114-15.  On the "profit/nonprofit" factor, the court noted that it did not matter whether the defendant actually received monetary benefit:

> [H]aving in mind that like academia, religion is generally regarded as "not dollar dominated," [the] use unquestionably profits [the defendant] by providing it at no cost with the core text essential to its members' religious observance, by attracting through distribution of [the text] new members who tithe ten percent of their income to [the defendant], and by enabling the ministry's growth. . . . It is beyond dispute that [the defendant] "profited" from copying [the text] – it gained an "advantage" or "benefit" from its distribution and use of [the text] without having to account to the copyright holder.

<u>Id.</u> at 1118.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date    June 10, 2010

Title    Don Henley, et al. v. Charles S. Devore, et al.

Like the church in <u>Worldwide Church</u>, which stood to gain parishioners through the unlicensed use of the plaintiff's copyrighted work, DeVore and Hart stood to gain publicity and campaign donations from their use of Henley's music. In fact, the videos contained links directing viewers to the DeVore campaign website, encouraging viewers to directly donate. Thus, under the logic of <u>Worldwide Church</u>, the Defendants "profited" from their use in the sense that they benefitted or gained an advantage without having to pay customary licensing fees to the Plaintiffs. 227 F.3d at 1118. In fact, Hart himself directly profited, as his compensation was tied to the amount of funds he raised. (Pls.' SS 38.)

Accordingly, both songs are used for commercial purposes under the fair use analysis, which weighs against the Defendants. The fact that "Tax" does not constitute parody also weighs against the Defendants. Assuming that "parody-of-the-author" is legitimate transformation under <u>Campbell</u>, "November's" implicit targeting of Henley weighs slightly in the Defendants' favor.

      ii.   *Nature of the Copyrighted Work*

There is no dispute that the Plaintiffs' works are expressive and at the core of copyright protection. However, with respect to "November," which may have some parodic character, this factor does not weigh heavily in the overall analysis in recognition that parodies "invariably copy publicly known, expressive works." <u>Campbell</u>, 510 U.S. at 586.

"Tax," on the other hand, has little claim to parody, as discussed above. Thus, the fact that "Tax" borrows from a musical composition, a highly expressive work that is at the core of copyright, weighs against the Defendants in the fair use balancing.

      iii.   *Amount and Substantiality of the Portion Used*

In the parody context, the third factor turns on "the persuasiveness of a parodist's justification for the particular copying done, . . . [;] the extent of permissible copying varies with the purpose and character of the use." <u>Campbell</u>, 510 U.S. at 586. The analysis of this factor will "also tend to address the fourth, by revealing the degree to which the parody may serve as a market substitute for the original or potentially licensed derivatives." <u>Id.</u> at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

Because a parody must be able to conjure up the work commented on (or possibly the work's author), at least some copying of a work is permitted. Id. at 588. "[U]sing some characteristic features cannot be avoided." Id. However, as the Supreme Court stated:

> Once enough has been taken to assure identification, how much more is reasonable will depend, say, on the extent to which the song's overriding purpose and character is to parody the original or, in contrast, the likelihood that the parody may serve as a market substitute for the original.

Id.; accord Dr. Seuss II, 109 F.3d at 1400 ("[T]he parodist is permitted a fair use of a copyrighted work if it takes no more than is necessary to 'recall' or 'conjure up' the object of his parody."); but see Burnett, 491 F. Supp. 2d at 970 ("[T]here is no requirement that 'parodists take the bare minimum amount of copyright material necessary to conjure up the original work.'" (citation omitted, emphasis in original)). A parodist is generally permitted greater license to borrow when parodying music: "Like a speech, a song is difficult to parody effectively without exact or near-exact copying. . . . This 'special need for accuracy,' provides some license for 'closer' parody." Fisher, 794 F.2d at 439.

It is undisputed that both "November" and "Tax" borrow heavily from the respective originals. The Defendants used karaoke tracks of each song as background and Hart supplied vocals. (Pls.' SS 58-59, 111.) The melodies remain identical, as do the rhyme scheme and syntax. (Pls.' SS 53-54, 104.) While the Defendants changed some of the lyrics, 65% of the "Summer" lyrics and 74.7% of the "Dance" lyrics were copied verbatim. (Pls.' SS 152.) This factor turns on whether such extensive copying was justified.

As discussed above with respect to the first factor, "Tax" is almost entirely satirical in nature and contains little or no parodic character. It therefore lacks the parody justification for appropriation. Otherwise, the transformation of the work is minimal — while their alterations somewhat change the meaning, the Defendants copied the music, rhyme scheme, and syntax almost entirely. The amount borrowed is excessive in relation to the transformation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

With "November," the question is much closer, assuming legitimate parodic character. As discussed above, "November" may have some parodic element — it pokes fun of Henley as a disillusioned Obama supporter. It may therefore be justified in using at least some of "Summer" in order to evoke Henley's image. However, this does not necessarily justify the extent to which "November" copies. In Campbell, the Court found that the defendant's song commented on the naivete of the original work. 510 U.S. at 583. The defendants' song borrowed the opening riff and the first line of the original, but substantially changed the lyrics, added new musical elements, and altered the beat of the original. Id. at 589. Nevertheless, the Court remanded the case for determination of whether the amount taken — just the opening riff and the opening line — was excessive in relation to the parodic element. Id.

The Defendants' copying in "November" exceeds that in Campbell, where the Court declined to decide the fair use question despite finding legitimate parodic purpose. See id. at 589. Indeed, the amount of the Defendants' copying goes far beyond anything that has been found to be fair use in the parody context. See, e.g., Fisher, 794 F.2d at 438-39 (29-second recording); Bourne, 602 F. Supp. 2d at 509-10 (new melody meant to evoke rather than copy original, with different lyrics); Burnett, 491 F. Supp. 2d at 970 (18-second scene of Carol Burnett); Mastercard, 2004 WL 434404, at *14 (majority of parody involved original work by parodist); Abilene Music, 320 F. Supp. 2d at 93 (only three lines from original, which were altered in word, melody, and style); Elsmere Music, 482 F. Supp. at 744 (only four notes and two words taken from 100-measure and 45-word song). Indeed, the Defendants' appropriation approaches or exceeds the amounts borrowed in many cases where courts rejected the fair use defense. See, e.g., MCA, 677 F.2d at 185 (defendants merely substituted dirty lyrics into song); Dr. Seuss II, 109 F.3d at 1402-03 (defendants copied visual elements of main character and rhyme scheme but substantially changed language); Columbia Pictures, 11 F. Supp. 2d at 1185-86 (defendants copied the "total 'look and feel'" of plaintiff's poster and merely substituted character); Walt Disney Prods. v. Air Pirates, 581 F.2d 751, 757-58 (9th Cir. 1978) (defendants copied visual elements of animated characters rather than evoking them).

The Defendants' justification for the copying of "Summer" is the necessity of evoking Henley. While this may allow for some appropriation, the Court finds that the amount borrowed goes far beyond that reasonably necessary to conjure up Henley. The Defendants did not take a portion of the song or alter the melody — they took virtually everything. Moreover, many of the "November" lyrics do not serve the purpose of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

ridiculing Henley and drift into pure satire, targeting Obama and Nancy Pelosi.  <u>See</u> Appendix A ("Obama overload / Obama overreach / We feel it everywhere / Trillions in the breach / Empty bank, empty Street / Dollar goes down alone / Pelosi's in the House / So we now all must atone.").  The Defendants argue that a lesser amount, a 30-second snippet perhaps, would have diluted the parody's impact and they would have been unable to "convey all of the political and parodic points they wished to make."  (Defs.' Mot. Br. 12.)  However, the parodic element, if any, of "November" is its lampooning of Henley, not of Obama, Pelosi, or their supporters generally.  Using Henley's music to make those political points is not justified under <u>Campbell</u>.

> iv.    *Effect of the Use on the Potential Market*

Under the "market effect" factor, the Court focuses on the extent to which the Defendants' works usurps the potential market for the original or its derivatives.  <u>Campbell</u>, 510 U.S. at 592.  It is not relevant that a use may damage the original's value through criticism.  <u>Id.</u> at 591-92.  "[T]he role of the courts is to distinguish between 'biting criticism that merely suppresses demand and copyright infringement, which usurps it.'"  <u>Id.</u> at 592 (quoting <u>Fisher</u>, 794 F.2d at 438) (internal brackets omitted).

This analysis requires consideration of more than just the market effect of the particular infringement at issue.  Courts are to consider "'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original."  <u>Id.</u> at 590 (citation omitted).  The burden is on the defendant to "bring forward favorable evidence" that potential markets will not be harmed.  <u>Dr. Seuss</u> II, 109 F.3d at 1403.  "[U]ncontroverted submissions that there was no likely effect on the market" do not suffice.  <u>See id.</u> (quoting <u>Campbell</u>, 510 U.S. at 590).

With respect to market impact on the originals, the Defendants point out that their songs were part of freely-available internet videos and were not sold in any format.  Moreover, they note Hart's apparent lack of talent as a vocalist in suggesting that their songs are unlikely to supplant the market for the original.  Several of the plaintiffs seem to agree that Hart's musical stylings are unlikely to threaten Henley's.  (Henley Depo. at 9:4-13, 103:20-104:14; Campbell Depo. at 14:15-16:4; Kortchmar Depo. at 103:9-24.)

However, the Court does not find that the Defendants have made an adequate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

showing on this factor.  The question is not whether "November" and "Tax" specifically threaten the market for the original; the question is whether widespread dissemination of similar satirical spins on the Plaintiffs' music will harm the market for the original.  See Campbell, 510 U.S. at 590.  Relevant to this inquiry is the fact that the Defendants have taken the entire musical composition and have changed a minimal amount of lyrics.  The Court cannot say as a matter of law that widespread use in a similar manner would not harm the market for the original.

The parties also dispute the effect on the market for derivative works.  Defendants' primary argument is that there is no market for licensed use of the works because the Plaintiffs refuse to license their works.  (Pls.' SS 13; Henley Depo. at 90:25-91:9.)  This is disputed, as the Plaintiffs have licensed their works for satirical or other commercial uses in the past and intend to consider licensing their works in the future. (Pls.' SS 10, 13, 14; Henley Depo. at 91:10-14.)  Moreover, whether the Plaintiffs have actually permitted licensing is irrelevant because the copyright laws protect the "potential market" for derivatives.  Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 145-46 (2d Cir. 1998) ("Although [plaintiff] has evidenced little if any interest in exploiting this market for derivative works . . . , the copyright law must respect that creative and economic choice.").  "Even an author who had disavowed any intention to publish his work during his lifetime was entitled to protection of his copyright, first, because the relevant consideration was the 'potential market' and, second, because he has the right to change his mind." Worldwide Church, 227 F.3d at 1119 (citing Salinger v. Random House, Inc., 811 F.2d 90, 99 (2d Cir. 1987)); see also Salinger I, 641 F. Supp. 2d at 268. The Defendants offer no evidence demonstrating that their songs would not usurp the potential licensing market for the Plaintiffs' songs, should they choose to license them.

Indeed, the Plaintiffs have shown evidence that the Defendants' use does supplant the market for derivatives of "Summer" and "Dance."  The Plaintiffs' expert testifies that licensees and advertisers do not like to use songs that are already associated with a particular product or cause.  (Pls.' SS 155-58.)  Defendants argue that this sort of harm is not market-substitution.  The Court disagrees.  The advertisers would be deterred from using the Plaintiffs' music because it has been used before, not because of the particular association with DeVore's message (though that may impact the valuation as well).  (Pls.' SS 155-58.)  This injury is the very essence of market substitution.

Therefore, with respect to "Tax," which does not have significant parodic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

character, the Defendants fail to meet their burden of demonstrating the absence of harm to the potential market for "Dance" or its derivatives.

However, with respect to "November," the analysis is a bit different because "November" does target Henley in part, which, as discussed above, may be a legitimate parodic purpose. Because Henley would be unlikely to license use of his song to ridicule him, such a song serves a different market than the original or its derivatives. See Fisher, 794 F.2d at 438. On the other hand, the alleged parodic element of "November" is slight in comparison to its main satirical thrust at Obama and his supporters generally. It may thus have some effect on the market for satirical versions of "Summer." Indeed, the substantial amount of material borrowed from "Summer" heightens the likelihood of market substitution even if there is some parodic element. See Campbell, 510 U.S. at 595 n.24. Because "Summer" and "November" are so similar in style and form, the Court cannot presume that there would be no derivative market usurpation, and the Defendants present no affirmative evidence of its absence.

Though it is a closer question than with regard to "Tax" — assuming legitimate parody — the Court finds that the Defendants have not demonstrated a lack of potential market harm by "November."

v.    *Aggregate Assessment*

The fair use analysis involves a delicate balancing of the four factors with an eye towards the purposes of copyright. "The doctrine has been said to be 'so flexible as virtually to defy definition.'" Princeton Univ. Press v. Mich. Document Servs., Inc., 99 F.3d 1381, 1392 (6th Cir. 1996) (quoting Time Inc. v. Bernard Geis Assocs., 293 F. Supp. 130, 144 (S.D.N.Y. 1968)). The case-by-case analysis resists bright-line determinations and the resulting decisions inevitably represent a sort of rough justice.

That said, the Defendants' song "Tax" does not present a difficult question. The song is pure satire which fails to take aim at the original or its author. It therefore lacks justification to borrow from "Dance," which, as a musical composition, lies at the core of copyright protection. And it does far more than borrow from "Dance" — it appropriates the entire melody, rhyme scheme, syntax, and a majority of the lyrics. Defendants have also failed to show that widespread use of this and similar satirical songs would not affect either the market for the original or potential derivatives. "Tax" is clearly not fair use.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

"November," on the hand, presents a closer question, assuming that targeting the author is a legitimate parodic purpose.  Although it primarily targets Obama, it does, in part, lampoon Henley as an Obama supporter.  It may thus contain some parodic element and would be justified in appropriating some of "Summer."  However, "November" goes far beyond what is necessary to conjure up Henley to hold him up to ridicule.  As with "Tax," "November" copies the melody, rhyme, syntax, and most of the lyrics.  Given the extent of the copying, Defendants have not met their burden of demonstrating the absence of market impact.  Although the Court finds this to be a closer question than "Tax," the Defendants have not met their burden of demonstrating that "November" constitutes fair use.

As noted above, the parties do not dispute that the Plaintiffs own a copyright to "Summer" and "Dance," or that the Defendants' songs "November" and "Tax" copy substantial portions of those songs.  Because the Defendants have failed to meet their burden of establishing a fair use defense, the Plaintiffs are entitled to summary judgment on their direct copyright infringement claim.

2.     Vicarious and Contributory Infringement

The parties each moved for summary judgment on the Plaintiffs' claims for vicarious and contributory infringement.  "[C]ontributory infringement requires proof that a defendant '(1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct.'"  Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009) (quoting Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 795 (9th Cir. 2007)).  "Vicarious infringement requires proof that 'that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement.'"  Id. (quoting Perfect 10, 487 F.3d at 729.

With respect to DeVore, the undisputed facts compel the grant of summary judgment to the Plaintiffs on the contributory and vicarious infringement claims.  It is undisputed that DeVore knew that Hart has made and distributed the infringing videos and in fact had materially contributed to the creations by writing the songs. (Pls.' SS 51, 56.)  DeVore also had supervisory control over Hart, one of his campaign managers, and directly benefitted from the infringement, as discussed above in Part III.A.1.i. (Pls.' SS 33.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 09-481 JVS (RNBx)            Date    June 10, 2010

Title    Don Henley, et al. v. Charles S. Devore, et al.

The undisputed evidence also shows that Hart suggested making the internet videos, thereby inducing DeVore's acts of infringement. (Pls.' SS 56.) He is therefore liable for contributory infringement. However, because Hart did not exercise any supervisory control over DeVore, he is not vicariously liable. (Pls.' SS 33.)

        3.    Willful Infringement

Infringement of a copyright is willful where the defendant either knowingly infringes or acts in reckless disregard as to infringement. In re Barboza, 545 F.3d 703 (9th Cir. 2008). "[O]ne who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." Princeton, 99 F.3d at 1392 (quoting Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyright § 14.04[B][3] (1996)). Thus, in the face of evidence indicating willfulness, the defendant "must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief." Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990).

The undisputed evidence indicates that DeVore and Hart were aware that their use of the music would infringe but for their alleged belief that the use was fair. DeVore was aware of the problems campaigns have had licensing music and asked Hart before and after the lawsuit, "hey, you know, you got the rights to this, right?" (Pls.' SS 43, 44.) The Defendants paid the Wall Street Journal approximately $3,500 for the use of a copyrighted article. (Pls.' SS 47.) Hart himself licensed his own images and advised others on how to avoid cease-and-desist letters for the online use of copyrighted images. (Pls.' SS 46; Hart Depo. at 278:11-279:22.)

Therefore, the willfulness issue turns on whether the Defendants had a good faith belief that their use constituted fair use and whether that belief was reasonable. The Plaintiffs have presented substantial evidence that the Defendants did not have good faith belief that their songs constituted fair use. Upon receiving notice that Henley had requested that YouTube take down the "November" video, DeVore "high-fiv[ed]" one of his staff, believing that his campaign "had struck a vein of gold." (Pls.' SS 82.) DeVore hoped that the dispute would get nationwide media attention and spur campaign donations. (Pls.' SS 86-87.) DeVore decided to counter notify YouTube under the DMCA to get the video reposted and did so without consulting with a copyright

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

attorney.[12]  (Pls.' SS 90-91, 96-97.)  He also arranged to have the videos hosted on other servers.  (Pls.' SS 99.)  He testified that he "made the calculation . . . that perhaps the earned media value would outweigh the time and effort and diversion and campaign resources in fighting the fight."  (Pls.' SS 95.)

After the Plaintiffs' infringement notification, DeVore also posted an online article promising to "look[] for every opportunity to turn any Don Henley work I can into a parody of any left tilting politician who deserves it."  (Pls.' SS 98.)  He told his staff to "rifle through all of Mr. Henley's catelogue [sic] for material."  (Pls.' SS 100.)  DeVore subsequently wrote "Tax" and Hart created the video.  (Pls.' SS 101, 108.)  Neither of them consulted an attorney before posting the "Tax" video to the internet.  (Pls.' SS 109.)  It was only after the Plaintiffs filed this action that the Defendants retained an attorney.  (Pls.' SS 136.)

The Defendants, however, have also presented evidence that they had a subjective good faith belief that their use was fair.  DeVore testified that Henley's songs were chosen to poke fun at Henley "because of his status as a liberal, entertainment icon."  (See DeVore Decl. ¶¶ 4-5.)  DeVore also testified that he used "Summer" and "Dance" because of their (purported) political messages and that his campaign videos commented on those messages.  (Id. ¶¶ 5-10.)  Moreover, in counter notifying YouTube to repost the videos, DeVore was required to state, under penalty of perjury, that he had a good faith belief that the removal was improper, i.e., that the videos were fair use.  See 17 U.S.C. § 512(g)(3).  At the summary judgment stage, the Court may not disregard DeVore's declarations regarding his subjective belief of fair use.  See Anderson, 477 U.S. at 255.

Nevertheless, Plaintiffs argue that the Defendants' belief was not in good faith because they were reckless with regard to that belief.  To demonstrate a good-faith belief in fair use, a defendant must take "reasonable steps to assure fair use before infringement."  Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 267, 279 (6th Cir. 2009).  The Plaintiffs point out that neither DeVore nor Hart ever consulted with an copyright attorney regarding their use of Henley's songs, even after notification from Henley that the songs were infringing.  In Bridgeport, the Sixth Circuit upheld a jury finding of willfulness where the defendants never investigated whether their use was fair

---

[12] Hart did discuss the video with a friend who was a tax attorney.  (Pls.' SS 90.)  The friend did not advise him about fair use and told him that he should hire an attorney.  (Pls.' SS 91.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

by, for example, consulting an attorney or researching the law.  See id.  That case, however, only establishes that failure to take such measures is probative of recklessness and not determinative.  The Court declines to hold that an infringer must, as a matter of law, consult an attorney or investigate complicated fair use doctrine to avoid a finding of willfulness.  Whether the Defendants "took reasonable steps to assure fair use" is a matter for the jury.

Finally, assuming a good faith belief of fair use, the Court cannot say on the present record that the belief was not objectively reasonable.  Whether a belief is objectively reasonable is a question of law.  Princeton, 99 F.3d at 1392.  Given the uncertainty of fair use doctrine in general and the disagreement between courts on the issue of parody targeting an author, the Court finds that a lack of reasonableness of the asserted belief is not apparent.  See id.

Accordingly, the Court finds that summary adjudication for either party on the willfulness issue is not appropriate.

B.    Lanham Act

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services.  Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1106 (9th Cir. 1992).  The Ninth Circuit has recognized a false endorsement claim under the Lanham Act "for the unauthorized imitation of [an individual's] distinctive attributes, where those attributes amount to an unregistered commercial 'trademark.'"  Id. at 1106-07.

The Defendants argue that Henley's musical compositions do not constitute protectable trademarks as they are not "distinctive attributes" of Henley.  Under the Lanham Act, a "trademark" includes "any word, name, symbol, or device, or any combination thereof used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127.  In a false endorsement case involving a celebrity, the "mark" is the celebrity's "persona."  White v. Samsung Elecs. Am., Inc., 971 F.2d 1395, 1400 (9th Cir. 1992).

In Waits v. Frito-Lay, Inc., singer Tom Waits asserted a false endorsement claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

under the Lanham Act against a party who had imitated Waits's distinctive voice in a parody song in a commercial advertisement. 978 F.2d at 1106. The Ninth Circuit recognized a cognizable Lanham Act claim for a vocal imitation of an individual. Id. at 1107. The plaintiff would have to prove a likelihood that consumers would be confused as to whether the individual actually sang in the advertisement. Id. at 1111.

However, in Oliveira v. Frito-Lay, Inc., 251 F.3d 56 (2d Cir. 2001), the Second Circuit questioned whether a musician could assert a false endorsement claim based on the use of that musician's performance of a song. See id. at 62. In that case, musician Astrud Gilberto sued the defendant for using the recording of her performance of "The Girl from Ipanema" in an advertisement. Id. at 57-58. She argued that, as a result of the success of the song, she became closely associated with the song, even becoming known as The Girl from Ipanema. Id. at 59. The district court dismissed the claim on summary judgment and the Second Circuit affirmed. Id. at 60, 62.

While recognizing that musical compositions in general are worthy of trademark protection, as they could become associated with a particular product, the court noted the absence of any precedent permitting a performer to hold a trademark in his or her own musical performance:

> Plaintiff has not cited a single precedent throughout the history of trademark supporting the notion that a performing artist acquires a trademark or service mark signifying herself in a recording of her own famous performance. The "signature performance" that a widespread audience associates with the performing artist is not unique to Gilberto. Many famous artists have recorded such signature performances that their audiences identify with the performer. Yet in no instance was such a performer held to own a protected mark in that recording.

Id. at 62; cf. EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000) (holding that a musical composition could not serve as a trademark for itself). The court also noted the widespread reasonable commercial expectations regarding music licensing and the potential disruption if performers were allowed to sue under a trademark theory. Id. at 63. The court distinguished Waits and other cases involving the use of look-alikes and sound-alikes, finding that the use of Gilberto's performance did not borrow her "persona," as in those cases. Id. at 62.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

Thus, the distinction between <u>Waits</u> and <u>Oliveira</u> is that in <u>Waits</u>, the defendants imitated Waits's voice in a manner leading consumers to believe that Waits was actually singing and endorsing their product, whereas in <u>Oliveira</u>, the defendants simply used a recording of a prior musical performance. Where an advertisement mimicks a celebrity's voice in endorsing a product, a customer may be understandably confused as to whether the celebrity is actually endorsing the product. However, the mere use of the celebrity's prior performance does not present the same sort of confusion.

Recognizing this distinction, a district court in the Central District of California dismissed a Lanham Act claim based on the use of a musical recording, but permitted a claim based on the use of the title and some lyrics from the song in a print and sign campaign. <u>Butler</u> v. <u>Target</u> Corp., 323 F. Supp. 2d 1052, 1059 (C.D. Cal. 2004).

This Court considered this issue on the Defendants' motion to dismiss, which was denied. First, the Court noted that the Defendants had used two of Henley's songs, thereby lending "an extra element beyond the mere copying of the underlying song." (Docket No. 22 at 14.) Second, the Court noted the allegation that Hart had mimicked Henley's voice, which would support a viable claim under <u>Waits</u>. (<u>Id.</u>) Thus, the Court permitted the Lanham Act claim, though noting it was a "close question." (<u>Id.</u>)

As to the first issue, the Court did not consider the impact of <u>Oliveira</u> at the pleading stage. <u>Oliveira</u> holds that a performer cannot hold a trademark in her performance of a musical composition. <u>Id.</u> at 62-63. Therefore, it does matter how many performances a defendant uses; the use of a performance does not violate any trademark right of the performer. <u>See id.</u> The Plaintiffs cannot rest their case on the fact that the Defendants used two, rather than one, of their songs.

The Plaintiffs attempt to distinguish <u>Oliveira</u> on several grounds. First, they argue that in <u>Oliveira</u>, the record on summary judgment did not support Gilberto's claim of implied endorsement, whereas the evidence here indicates actual confusion as to whether Henley endorsed DeVore. This, however, was not the reasoning of <u>Oliveira</u>. The Second Circuit decided that she did not have a trademark in her performance, despite the assumption that she was closely associated with it. <u>See id.</u> at 62. The court noted that many artists are closely associated with their works, yet are not afforded trademark protection. <u>Id.</u> Thus, despite the Plaintiffs' evidence of a close association between Henley and his music, under <u>Oliveira</u>, he does not enjoy trademark protection of his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

performance.

Second, the Plaintiffs note that the Defendants in this case did not use Henley's actual performance of "Summer" and "Dance," but created their own versions, which simulated his musical and vocal performances. Thus, the Plaintiffs argue, this case is more like Waits than Oliveira. The Plaintiffs are correct that this fact takes this case outside of Oliveira. However, the cause of action under Waits turns on the likelihood that consumers will believe that the musician was actually performing on the charged advertisement, see 978 F.2d at 1106, which the Court addresses below.

Finally, the Plaintiffs suggest that Oliveira is in conflict with the law of this circuit, citing Butler. However, Butler actually applied Oliveria (and EMI) in dismissing on the pleadings a Lanham Act claim based on the use of a music recording. Butler, 323 F. Supp. 2d at 1059. The Court recognizes that Oliveira is not binding here, but finds the decision persuasive. Oliveira notes the absence of any precedent granting a performer trademark protection for their performances and the resulting reasonable expectation of licensees who wish to use copyrighted works. 251 F.3d at 63; cf. Sinatra v. Goodyear Tire & Rubber Co., 435 F.2d 711, 716-18 (9th Cir. 1970) (affirming summary judgment against Nancy Sinatra on her state law "passing-off" claim where defendants used an imitation of her song because such a claim would impinge on copyrights). This Court also recognizes this absence of authority for the Plaintiffs' theory and declines to create a new trademark right that "would be profoundly disruptive to commerce." See Oliveira, 251 F.3d at 63.

Accordingly, the Court finds that the Plaintiffs cannot maintain a Lanham Act claim based purely on the use of Henley's songs.

As to the second theory of Lanham Act liability, the Court finds that no reasonable jury could find a likelihood that Henley actually performed "November" and "Tax." See Waits, 978 F.2d at 1111. Having listened to Hart's less-than-angelic voice in comparison with Henley's more soothing vocals, the Court finds that a reasonable jury would not find a likelihood of confusion.[13] (See Charlesworth Decl., Exs. 1-4.) This is backed up by testimony from each Plaintiff that Hart's singing was unlikely to be confused for Henley's. (Henley Depo. at 9:4-13, 103:20-104:14; Campbell Depo. at 14:15-16:4;

---

[13] At best, Hart's performance is a poor and unconvincing imitation unlikely to fool anyone.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |
|---|---|---|---|

| Title | Don Henley, et al. v. Charles S. Devore, et al. |
|---|---|

Kortchmar Depo. at 103:9-24.)  Plaintiffs have submitted no evidence that an audience is likely to believe that Henley actually performed the songs.

The Plaintiffs have submitted evidence that an audience might believe that Henley approved the Defendants' use of the Plaintiffs' songs.  They submitted an expert report by Hal Poret ("Poret") who conducted a survey to see if an audience "would mistakenly believe that plaintiff Don Henley endorsed or approved or is otherwise affiliated with or associated with the videos."  (Poret Decl., Ex. 1 at 1.)  Poret found that, of the survey respondents who knew that the videos used Henley's music, 48% thought that Henley either "endorsed the video(s) or authorized or approved the use of his music in the video(s)."  (Id. at 10.)  This is not, however, probative of whether people would reasonably think that Henley <u>actually</u> <u>performed</u> the music in the videos, which is the relevant question under <u>Waits</u>.  To the extent that Poret's report indicates a likelihood that Henley's endorsement was based purely on the use of his music, this is not a cognizable injury under <u>Oliveira</u>.

Because <u>Oliveira</u> bars Henley's Lanham Act claim based on the appropriation of Henley's music, and the undisputed facts do not create a triable issue as to whether a reasonable audience might be misled to believe that Henley actually performed the music, the Defendants are entitled to summary judgment on Henley's Lanham Act claim.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS summary judgment in favor of the Plaintiffs and against the Defendants on the issue of copyright infringement of both "Summer" and "Dance."  The Court DENIES summary adjudication to both parties on

the issue of whether the infringement was willful.  The Court GRANTS summary judgment in favor of the Defendants and against the Plaintiffs on Henley's Lanham Act claim.

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

|  | 0 | : | 00 |
|---|---|---|---|
| Initials of Preparer | kjt | | |

APPENDIX A

| "The Boys of Summer" | "The Hope of November" |
|---|---|
| Nobody on the road<br>Nobody on the beach<br>I feel it in the air<br>The summer's out of reach<br>Empty lake, empty streets | Obama overload<br>Obama overreach<br>We feel it everywhere<br>Trillions in the breach<br>Empty bank, empty Street |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

| | |
|---|---|
| The sun goes down alone<br>I'm drivin' by your house<br>Though I know you're not home | Dollar goes down alone<br>Pelosi's in the House<br>So we now all must atone |
| But I can see you –<br>Your brown skin shinin' in the sun<br>*You got your hair combed back and your*<br>*sunglasses on, baby*<br>And I can tell you my love for you<br>will still be strong<br>After the boys of summer have gone | But we can see through –<br>Your broken promises oh One<br>*You got your head cocked back and your*<br>*teleprompter on, maybe*<br>And can we tell you our love for you will<br>still be strong<br>After the hope of November's gone? |
| I never will forget those nights<br>I wonder if it was a dream<br>Remember how you made me crazy?<br>Remember how I made you scream<br>Now I don't understand<br>What happened to our love.<br>But babe, I'm gonna get you back<br>I'm gonna show you what I'm<br>made of | We never will forget those nights<br>We wonder if it was a dream<br>Remember how you made us crazy?<br>Remember how I made you beam<br>Now we do understand<br>What happened to our love.<br>Barack, we're gonna cut no slack<br>We're gonna show you what we're made<br>of |
| I can see you –<br>Your brown skin shinin' in the sun<br>*I see you walkin' real slow and*<br>*you're smilin' at everyone*<br>I can tell you my love for you will<br>still be strong<br>After the boys of summer have gone | We can see through –<br>Your broken promises oh One<br>*We see you talkin' real slow and you're*<br>*smilin' at everyone*<br>Can we tell you our love for you will still<br>be strong<br>After the hope of November's gone? |
| Out on the road today,<br>I saw a DEADHEAD sticker on a Cadillac<br>A little voice inside my head said,<br>"Don't look back. You can never look<br>back." | Out on the road today,<br>I saw a OBAMA sticker on a<br>Cadillac<br>A little voice inside my head said,<br>"Don't look back. You can never look |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-481 JVS (RNBx) | Date | June 10, 2010 |

| | |
|---|---|
| Title | Don Henley, et al. v. Charles S. Devore, et al. |

| | |
|---|---|
| I thought I knew what love was<br>What did I know?<br>Those days are gone forever<br>I should just let them go but –<br><br>I can see you –<br>Your brown skin shinin' in the sun<br>*You got that top pulled down and*<br>*that radio on, baby*<br>And I can tell you my love for you<br>will still be strong<br>After the boys of summer have gone<br><br>I can see you –<br>Your brown skin shinin' in the sun<br>*You got that hair slicked back and those*<br>*Wayfarers on, baby*<br>I can tell you my love for you will<br>still be strong<br>After the boys of summer have gone<br><br>(Charlesworth Decl., Ex. 6; DeVore Decl.,<br>Ex. C.) | back."<br>We thought we knew what love was<br>What did we know?<br>Those days are gone forever<br>We should just let them go but –<br><br>We can see through –<br>Your broken promises oh One<br>*You got that Rush pulled down and talk*<br>*radio gone, maybe*<br>And can we tell you our love for you will<br>still be strong<br>After the hope of November's gone?<br><br>We can see through –<br>Your broken promises oh One<br>*You got your head cocked back and your*<br>*teleprompter on, maybe*<br>Can we tell you our love for you will still<br>be strong<br>After the hope of November's gone?<br><br>(Charlesworth Decl., Ex. 7; DeVore Decl.,<br>Ex. E.) |

APPENDIX B

| "All She Wants to Do Is Dance" | "All She Wants to Do Is Tax" |
|---|---|
| They're pickin' up the prisoners and<br>puttin' 'em in a pen<br>*And all she wants to do is dance, dance*<br>Rebels been rebels since I don't | They're pickin' up the taxpayers and<br>puttin' 'em in a jam<br>*And all she wants to do is tax, tax*<br>Liberals been liberals since I don't know |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

---

| | |
|---|---|
| know when | when |
| *And all she wants to do is dance* | *And all she wants to do is tax* |
| Molotov cocktail – the local | Cap and trade program – from D.C. Inc. |
| drink | *And all she wants to do is tax, tax* |
| *And all she wants to do is dance, dance* | They pull and push us right over the brink |
| They mix 'em up right in the kitchen sink | *And all she wants to do is tax* |
| *And all she wants to do is dance* | Barbara Boxer talkin' round – |
| Crazy people walkin' around | control in her sight |
| with blood in their eyes | *And all she wants to do is tax, tax* |
| *And all she wants to do is dance, dance* | Wild-eyed global warmers who ain't |
| Wild-eyed pistol wavers who ain't afraid | afraid to lie |
| to die | *And all she wants to do is –* |
| *And all she wants to do is –* | *All she wants to do is tax and break our* |
| *All she wants to do is dance and make* | *backs* |
| *romance* | |
| | She can't feel the heat comin' off the |
| She can't feel the heat comin' off the | street |
| street | She wants to party |
| She wants to party | She wants to get down |
| She wants to get down | *All she wants to do is –* |
| *All she wants to do is –* | *All she wants to do is tax* |
| *All she wants to do is dance* | |
| | Well, the government rigged the market in |
| Well, the government bugged the men's | the carbon trading scam |
| room in the local disco lounge | *And all she wants to do is tax, tax* |
| *And all she wants to do is dance, dance* | To keep the boys a sellin' all the credits |
| To keep the boys from sellin' all the | they could, ma'am |
| weapons they could scrounge | *And all she wants to do is tax* |
| *And all she wants to do is dance* | But that don't keep the boys from makin' |
| But that don't keep the boys from makin' | a buck or two |
| a buck or two | *And all she wants to do is tax, tax* |
| *And all she wants to do is dance, dance* | They still can sell the public on the good |
| They still can sell the army all the drugs | that they can do |
| they can do | *And all she wants to do is –* |
| *And all she wants to do is –* | *All she wants to do is tax and break our* |
| *All she wants to do is dance and make* | *backs* |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-481 JVS (RNBx)                    Date   June 10, 2010

Title   Don Henley, et al. v. Charles S. Devore, et al.

| | |
|---|---|
| *romance* | Well, we barely made twenty ten, the vote was in doubt |
| Well, we barely made the airport for the last plane out | And we finished up the campaign she could hear the people shout |
| As we taxied down the runway I could hear the people shout | They said, "Don't come back here Boxer!" |
| They said, "Don't come back here Yankee!" | But if she ever does – we'll bring more money |
| But if I ever do – I'll bring more money | *'Cause all she wants to do is tax and break our backs* |
| *'Cause all she wants to do is dance and make romance* | |
| | Never mind the heat comin' off the street |
| Never mind the heat comin' off the street | She wants to party |
| She wants to party | She wants to get down |
| She wants to get down | *All she wants to do is –* |
| *All she wants to do is –* | *All she wants to do is tax* |
| *All she wants to do is dance* | *All she wants to do is tax and break our backs* |
| *All she wants to do is dance and make romance* | *All she wants to do is tax* |
| *All she wants to do is dance* | |
| | (Charlesworth Decl., Ex. 9; DeVore Decl., Ex. I.) |
| (Charlesworth Decl., Ex. 8; DeVore Decl., Ex. G.) | |